[No. 1879, August 10, 1916.]
## GOOCH v. COLEMAN.

### SYLLABUS BY THE COURT.

1.  Parol testimony cannot be received to contradict, vary, add to, or subtract from the terms of a valid written contract.                                                    P. 49

2.  A custom or usage which is repugnant to the terms of an express contract is not permitted to operate against it, and evidence of it is inadmissible; for, while usage may be admissible to explain what is doubtful, it is never admissible to contradict what is plain.                              P. 51

3.  The fact that A. has reasonable cause to believe, and does believe, that B. will be unable to perform his part of the contract, does not, of itself, discharge A. from performing his part.                                        P. 52

Appeal from District Court, Socorro County; M. C. Mechem, Judge.

Action by Ben F. Gooch against Henry Coleman. From a judgment for plaintiff, defendant appeals. Affirmed in so far as judgment was rendered for plaintiff, and reversed and remanded as to that portion of the judgment denying plaintiff relief.

W. H. WINTER of El Paso, Tex., and M. C. SPICER of Socorro, for appellant.

JAMES G. FITCH of Socorro, for appellee.

### STATEMENT OF FACTS.

This action was brought by appellee against appellant to recover the sum of $3,000, as damages for an alleged breach of a certain contract for the sale of 400 head of cattle. Under a peremptory instruction by the court, the jury returned a verdict for appellee in the sum of $1,-072.05, which was the amount of forfeit money, with in-

terest, which had been posted by appellee to guarantee his performance of the terms of the contract, under which he agreed to purchase 150 steers, one year old and up to five years old; 175 dry cows; 50 cows and calves; and 25 heifer yearlings. The contract provided that the appellee should have the privilege to cut back or reject 10 per cent. of cattle offered under the contract, exclusive of cattle not in good shipping condition, diseased or unmerchantable, and that he should reject the said 10 per cent. on the 14th day of November, 1914, at the ranch where party of the first part, appellant here, should have the cattle rounded up in a herd, just before starting for the point of delivery. It was also further agreed by the terms of the contract that appellee was to receive said cattle at the time, place, and on the terms and conditions set forth in the contract, and to make final payment to appellant on said cattle, at the time of delivery, failure on his part causing a forfeiture of the sum of $1,050 paid over to appellant at the time the contract was entered into as a first payment on said cattle.

The consideration for the sale of the cattle referred to was expressed in the contract as $14,550, the cattle to be delivered on board cars and to be of a good grade of stock, free of disease, and in good shipping condition, the point of delivery being fixed as Magdalena, N. M. The date for delivery at Magdalena was left blank, owing to an uncertainty as to when the railroad company could furnish the necessary cars, it being understood, however, as disclosed by the record, that the delivery was to be made November 20th, or at the earliest date thereafter when the cars could be furnished.

On the morning of November 14th, the day specified for the appearance of appellee at the ranch of appellant to exercise his privilege to make a 10 per cent. cut, the appellee left Magdalena in an automobile, but owing to certain accidents, did not arrive at the ranch until a late hour in the evening. On the following morning the parties, with certain others, rode to where the cattle were being held, and inspected the herd, after which there were some negotiations between the parties as to the terms of

certain notes to be given for the balance of the purchase price. About the same time it also developed that the parties could not agree as to the meaning of the term in the contract "50 cows and calves," whereupon the appellant declared the contract void because the appellee had not appeared on the previous day to make the 10 per cent. cut. Appellee then announced his willingness to waive his right to the cut, and insisted that the appellant should drive the cattle to Magdalena, stating that he would there pay for them, and if they could not agree as to the meaning of the contract, they could leave it to three cow men, who could settle the matter. Appellee further testified that he would take the cattle as soon as they arrived at Magdalena, whether the cars were there or not, and pay for them in cash. He proceeded to Magdalena, and was there on the 20th of November and for several days thereafter, but appellant failed to drive the cattle to Magdalena and elected to treat the contract as of no effect.

At the trial the evidence of a number of cattle men was offered as to the meaning of the term "50 cows and calves," all agreeing that the term meant 50 cows with calves by their sides. Witnesses also testified concerning the market value of the cattle on November 20, 1914, and for the remainder of that month, the testimony varying in figures from $16,000 to $17,000, as shown by the evidence of appellee, and the evidence for the appellant tending to show that the value of the cattle under the contract was $15,350.

The court refused to direct the jury to include in its verdict the difference between the contract price and market price at the time and place of delivery, and in effect instructed them that the plaintiff, appellee here, in order to recover for this item of damage, must first show that the defendant, or appellant, did not have any reason to believe that the plaintiff could not comply with the terms of the contract.

From the judgment of the trial court this appeal is prayed.

## OPINION OF THE COURT.

HANNA, J. (after stating the facts as above.)—The first point raised by appellant in his brief is that appellee should have cut out of the herd at the Coleman ranch on the 14th day of November all animals falling within his 10 per cent. cut, and should have, at that time and place, received or accepted the remaining cattle on that day in accordance with the contract as it was understood between the parties, and according to the custom of cattle men when acting under a contract like the one sued upon, and for these reasons the court erred in holding that appellee did not breach the contract by his failure to make the cut at the ranch, and did not forfeit to the appellant the forfeit money which had been posted under the conditions of the contract. It is to be borne in mind that the contract provided for the final delivery of the cattle at Magdalena, and, while true that the 10 per cent. cut was to be made at the ranch of appellant, it is argued by appellant that until the cut was made he would not know what cattle to drive to Magdalena for final delivery. It is contended that the contract was ambiguous as to where it was to be determined what were unmerchantable cattle, and when and where they were to be cut out, and that therefore it was competent to offer verbal evidence to prove the intention of the parties in these respects. While not disagreeing with the contention of appellant as to the general rules for the interpretation of contracts when ambiguous, we cannot agree that a necessity for the application of these rules prevails. The evident purpose of the offer of the evidence in question was to show that the purchaser agreed to come to the ranch on November 14th, for the purpose of classifying and receiving cattle. If this be true, and the evidence be admissible, it is clear that appellant would be correct in his position that the purchaser, appellee here, failing to appear at the time and place fixed, had forfeited his contract, and appellant, therefore, would not have been compelled to tender the delivery at Magdalena, or, failing so to do, to assume responsibility for a breach of the contract on his part. The evidence offered, tending thus to

vary the terms of contract, was not admitted by the trial court, and in this ruling we do not consider that the trial court committed error. Under the terms of the contract the seller was bound to deliver on board the cars at Magdalena a good grade of stock, free of disease, and in good shipping condition. The purchaser by the terms of the contract had the "privilege to cut back or reject 10 per cent. of cattle offered on this contract exclusive of cattle not in good shipping condition, diseased, or unmerchantable." This privilege it was further provided in the same paragraph of the contract, was to be exercised by the purchaser on the 14th day of November, 1914, "at the ranch where first party shall have said cattle rounded up in a herd just before starting for point of delivery." This latter provision of the contract would tend to clear away all question of ambiguity as to the matter of the point of delivery, which was clearly not to be at the ranch of appellant, but at Magdalena, as elsewhere stated in the contracts. Therefore, there being no ambiguity in this respect, there could not have been error on the part of the trial court in excluding testimony seeking to show that the purchaser was bound to receive the cattle at the ranch, or in other words, seeking to show that the point of delivery was at the Coleman ranch rather than at Magdalena, which latter place is clearly indicated by the terms of the contract.

[1] In the case of Locke v. Murdoch, 20 N. M. 522, 151 Pac. 298, this court approved the well-known general rule that parol testimony cannot be received to contradict, vary, add to, or subtract from the terms of a valid written contract. While this rule is subject to some exceptions, as in the case of ambiguity, we cannot agree that any exception to the rule exists under the facts of this case. The argument that the evidence was admissible because of the custom which existed among cattle men is not tenable, and we need not give the matter further consideration in this respect.

The second proposition urged by appellant is based upon alleged error in the action of the trial court in sustaining

an objection to the following question, addressed to the plaintiff, appellee here, on cross-examination, to-wit:

"If what you say is true that the understanding was that you were not to receive the cattle at the ranch on the 14th, why were you in such a hurry to get there on the 14th?"

It is argued that it was proper to show how the parties interpreted the contract as to where the cattle were to be received, and where the unmerchantable cattle were to be cut out, under the general rule that where parties have given a contract a particular construction, such construction will generally be adopted by the court in giving effect to its provisions. Again we find no grounds for controversy as to the general rule, but cannot agree as to its application to the facts under consideration. To permit the application of this rule to the facts of the case at bar would be to change the clear meaning of the terms of the contract itself and give to them a meaning different from that expressed, for reasons which we have quite definitely set out in the foregoing part of this opinion. It must be borne in mind that the seller was, under the terms of the contract, to deliver only merchantable cattle, the privilege of the purchaser being to cut back or reject 10 per cent. of the cattle offered. With this privilege, for a privilege it clearly was, in mind, it was not unnatural that the purchaser was in a hurry to arrive at the place designated for the exercise thereof, and his haste does not in any way indicate that the place referred to was necessarily the place of delivery. Furthermore, the construction contended for by appellant, and under which he insisted upon his right to interrogate the witness, would have required the admission of evidence contradicting the express terms of the contract had the answers been such as were apparently called for by the question of appellant. Aside from the difficulty we find in seeing any light that the question and answer thereto might have thrown upon the terms and conditions of the contract, we consider that the question and answer at best could have done no more than contradict the terms of the contract, and therefore, under the rule in the case of Locke v. Mur-

doch, previously referred to, we do not consider that the court erred in rejecting the testimony offered.

The third, fourth, fifth and sixth contentions of appellant are predicated upon the same contention that appellant should have been permitted to show that the parties had given a construction to the contract different from its expressed conditions, and should further have been permitted to show the usage or custom among cow men, under contracts similar to the one sued upon, as to the place where the unmerchantable cattle were to be cut out, and the merchantable cattle to be received. Each particular assignment is based upon the offer of evidence and its exclusion by the trial court. But these several assignments are disposed of by our conclusion that the admission of the several items of evidence in question would have been objectionable on the ground that the terms of the written instrument were sought to be varied by parol testimony. For the reasons stated we do not find that the trial court committed error in ruling as it did upon the several matters in question.

[2]    The seventh point relied upon is that the court should not have received the testimony as to the custom among cow men that calves should not be counted in the use of the phrase "50 cows and calves," and that such testimony was in direct variance of the express written terms of the contract, which called for 400 head, the testimony as to the custom having a tendency to vary the terms of the contract in this respect, in that by the testimony a larger number of cattle would be shown to have been sold than the number fixed by the contract. As indicated, the testimony in question was that the expression "50 cows and calves," when used in contracts of this character, meant 50 cows with calves by their sides. The rule contended for by appellant is long established and not to be contradicted. It is set out in 12 Cyc. at pages 1091 and 1092, in the following language:

"A custom or usage which is repugnant to the terms of an express contract is not permitted to operate against it, and evidence of it is inadmissible; for while usage may be admissible to explain what is doubtful, it is never admissible to contradict what is plain."

The trial court evidently considered that the term "50 cows and calves" was doubtful in meaning, and we cannot see how it could be considered to have erred in this respect. To the lay mind the expression "50 cows and calves" might have meant 48 cows and two calves, but the custom of cow men is shown to put a different construction upon the use of the words, as was indicated by the testimony of the several witnesses, who said that this expression would be understood "50 cows with calves by their sides," or "50 cows and 50 calves." For the reasons stated, we do not consider that the court committed error in admitting the testimony of the custom in question in order that the somewhat ambiguous term of the contract might be made clear.

The eighth point of appellant is that the testimony offered by him that appellee verbally agreed to receive the cattle for classifying and cutting out at his ranch on November 14th, before appellant should be required to drive them to Magdalena, was improperly excluded, on the ground that the contract was not clear, and therefore verbal evidence was admissible to explain its meaning and the intention of the parties. Again this matter is disposed of by our conclusion that the contract was plain, and for that reason parol evidence could not properly be admitted to change its express terms or conditions.

[3] This brings us to a consideration of the questions presented by the cross-appeal of appellee. It is to be borne in mind that the trial court held that appellee had not breached the contract by his failure to make the cut on November 14, 1914, and that it was the duty of the defendant to carry out the contract and make delivery at Magdalena. While directing that the jury should return a verdict for the appellee for the amount of purchase money advanced, with interest, the trial court declined to direct them to include in their verdict for damages the difference between the contract price and the market price at the time and place of delivery. The only ground of error urged by appellee in support of his cross-appeal

which we deem it necessary to consider is the one predicated upon the third instruction of the trial court, which instruction is as follows:

"The second cause of action here alleged is for the loss which the plaintiff claims he suffered by reason of the failure of the defendant to comply with said contract. I instruct you that it is necessary, in order for the plaintiff to recover any damages for and on account of the alleged failure of the defendant to perform said contract, that you must find from the evidence in the case that the defendant did not have any reason to believe that the plaintiff could not comply with the terms of said written contract; and, if you believe that the defendant had no reason to think but that the plaintiff could comply with the contract, then you will give the plaintiff by your verdict such damages for the failure of the defendant to deliver the cattle at Magdalena in accordance with the contract as you may find under the following instructions."

It is argued that there was nothing in the evidence to warrant this instruction, and that appellant did not base his refusal to make delivery at Magdalena upon such ground, but that appellee advised appellant of his willingness and ability to take and pay for the cattle as soon as they arrived at Magdalena, irrespective of whether or not cars should be available, and then apparently went to Magdalena in order to receive the same, as to all of which there is no contradiction in the testimony. As to this last contention we are inclined to believe that appellee is correct. The rule is stated in 3 Page on Contracts, § 1449, that:

"The fact that A. has reasonable cause to believe, and does believe, that B. will be unable to perform his part of the contract does not, of itself, discharge A. from performing his part."

Considering this rule, it would seem to be evident that the trial court substituted therefor a possible belief which might or might not have been present in the mind of appellant, and which, even though present, would not have excused his failure to perform the terms of his contract.

For the reasons stated, the judgment of the lower court, for the sum of $1,072.05, is affirmed, and the judgment in so far as it refused the plaintiff damages, arising from

the breach of contract by appellant, is reversed, and the cause remanded, with instructions to award execution for the said sum of $1,072.05 and to award a new trial as to the said cause of action for damages for breach of the contract by appellant; and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.

### SYLLABUS BY THE COURT.