No. 21,978.

J. L. HENDERSON and W. I. SOUTHERN, Partners, etc., *Appellees,* v. THE MAGNOLIA PETROLEUM COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

WELL-DRILLING TOOLS—*Destroyed by Fire—Usage and Custom—Incompetent to Establish Liability.* In an action to recover for the value of well-drilling tools which were destroyed by fire, it was shown that plaintiffs agreed to drill an oil and gas well for the defendant and were to receive $1.75 a foot, and $60 a day for day work, which included underreaming, pulling the pipes, cleaning out, and work of that kind. Nothing was said about the responsibility of either party for losses of tools by fire or otherwise. *Held,* that in such an action it is incompetent to prove an alleged general usage and local custom throughout the oil fields of Kansas that when drillers are working for and under the direction of the owner of the well being drilled, the latter is responsible for losses of the drillers' tools resulting from fires.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed April 12, 1919. Reversed.

*B. R. Leydig, K. M. Geddes, E. W. Grant,* all of El Dorado, *D. B. Blakeney, J. H. Maxey,* both of Tulsa, Okla., *George C. Greer,* and *W. H. Francis,* both of Dallas, Tex., for the appellant.

*C. A. Leland, L. J. Bond,* and *C. L. Harris,* all of El Dorado, for the appellees.

The opinion of the court was delivered by

PORTER, J.: Plaintiffs recovered judgment against the defendant for the value of well-drilling tools which were destroyed by fire. The defendant appeals.

The petition alleged the employment of plaintiffs under an oral contract to drill an oil and gas well on defendant's premises; that during the progress of the work a fire occurred without plaintiffs' fault, which destroyed their drilling tools and outfit, which were of the value of $1,267.62. The petition then alleged that it was the general usage and custom throughout the oil fields of Kansas, well known to defendant, that when drillers are working for and under the direction of the owners of the well being drilled, the latter are responsible for losses resulting from fires occurring through no fault of the drillers.

In addition to a general denial, the answer alleged that the fire was caused by the negligence of plaintiffs in placing their boiler in close proximity to the well, from which gas was escaping, and in leaving the boiler with a fire under it, well knowing the danger of the gas igniting. In a cross petition it was alleged that the same fire destroyed the derrick belonging to defendant; that it was the general usage and custom throughout the oil and gas fields, well known to plaintiffs, that they would be liable for losses to defendant's derrick by fire under such circumstances, and defendant asked judgment for $1,500, the value of the derrick.

The oral contract was that plaintiffs were to drill the well for $1.75 a foot, and $60 a day for day work, which included underreaming, pulling the pipes, cleaning out, and work of that kind. Nothing was said about the responsibility of either party for losses of tools by fire or otherwise. The plaintiffs employed their own men, who did the work on the well. The drillers encountered strong gas, and under the direction of the defendant a "bradenhead" was put on, which is a device for piping the gas away from the well. When the drilling reached 2,000 feet defendant directed plaintiffs to cease drilling and to underream. In order to do this it became necessary to remove the bradenhead. Late on the same day a part of the derrick was broken, and it was necessary to wait until the next morning before it could be repaired. Plaintiffs had located their boiler at a distance of about 110 feet east of the well. When the parties quit work that evening the wind was blowing

strong from the west. Southern, one of the plaintiffs, testified that there was a good deal of wind and some of the workmen were afraid of fire when they stopped work; that there was a lot of gas there; and that the 'farm boss of the defendant directed plaintiffs' men to remain out there that night and stay around the work. He testified:

"When the bradenhead was taken off it occurred to me that the boiler should be set back and I spoke about it. . . . I placed the boiler in place in the beginning and it was my boiler, and my men set it. I thought it should be set back when the bradenhead was taken off, but I did not consider it my place to set it back. . . . I was paid for putting the bradenhead on. It was furnished by the company and my men helped to do it. . . . We knew the volume of gas. It was getting pretty strong and the boiler is an open fire, about 110 feet from the hole."

The testimony is undisputed that the fire, which occurred at 2:30 on the following morning, was caused by the gas which was flowing from the well becoming ignited by the fire under the boiler. Testifying to the custom upon which plaintiffs relied, Mr. Southern said, in substance, that where a contractor is drilling by the foot he is responsible for any loss, but when he is doing work by the day, such as underreaming, the owner of the well is liable for any loss by fire, or loss of tools, in fact, for any loss the driller may sustain.

We are satisfied the judgment cannot stand, and that it was error to overrule the demurrer to the evidence. There was nothing ambiguous, or uncertain, or indefinite about the terms of the contract. Who should be responsible for the loss of the drillers' tools in case fire occurred was something entirely collateral to the contract. It was not necessary to agree upon that in order to make effective the contract for drilling the well. The proper office of usage or custom is to explain technical terms in contracts, or to make certain that which is indefinite, obscure, or ambiguous. (*McSherry v. Blanchfield*, 68 Kan. 310, 75 Pac. 121.) It is proper to supply by custom necessary matters upon which the contract is silent, but it is never used to make a contract about a collateral matter which is not necessary to and bound up in the contract. Wherever it is necessary in order to make the contract effective, it is competent to show custom and usage. In a case where one of the parties contracted to furnish brick in a building at a certain price per thousand, there was no method provided in the con-

tract how the number of bricks should be ascertained. After the building was completed a dispute arose as to the number of bricks used. It was not practical to count them, and it was held competent to prove a general custom and usage in the city of Wichita at the time the contract was made, by which the number of bricks in a wall were estimated by certain measurements. (*Smythe v. Parsons*, 37 Kan. 79, 14 Pac. 444.) There was an obvious omission of something absolutely necessary to make the contract itself effective.

In *Atkinson v. Kirkpatrick*, 90 Kan. 515, 135 Pac. 579, a custom was held inadmissible. There, defendant, when sued for rent of a store building, claimed the right to deduct from the rent the amount he had paid for water, claiming a well-recognized custom in Arkansas City by which the landlord of business property, in the absence of any agreement, paid the water rent. The lease was in writing and made no provision as to which party should pay for the water. The jury found that a custom of that kind obtained as claimed by the defendant. The judgment was reversed. It was held that the existence of the alleged usage or custom could impose no liability upon the landlord nor create a contract where the parties had made none. It is proper to show a custom or usage in order to supply portions of a contract which the parties have made, but which do not appear on the face of the contract, or which have been obviously omitted. (See, also, *Eckhardt v. Taylor*, 90 Kan. 698, 136 Pac. 218.) Well-known principles of law governed the rights of the parties in the present case. In the absence of a special contract covering the matter, the plaintiffs, in order to recover against defendant, would have been obliged to show that the injury or destruction of the tools was caused by some negligent act of the defendant. They could not by proof of a local custom or usage impose upon the defendant a liability arising out of a collateral matter wholly outside of the contract.

Moreover, the evidence offered by plaintiffs was insufficient to establish the existence of a well-known and recognized custom. As to the character and degree of proof required to show a local custom contrary to established principles of law, see *Manufacturing Co. v. Merriam*, ante p. 646.

There is no force in the contention that defendant, by alleg-

ing a custom in the cross petition, is estopped to deny the exist-
ence or legal effect of the custom pleaded and relied upon by
the plaintiffs.

It follows that the judgment will be reversed and the cause
remanded with directions to enter judgment for the defendant.