No. 23,950.

W. E. HEZLEP, *Appellant,* v. A-1 OIL & GAS COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Drilling Oil and Gas Well—Terms of Contract—Liability for Delay and Expenses Caused by Latent Defects in Casings.* Where a contract for drilling an oil well provides, that, when the well is completed the contractor shall deliver the same to the oil company, free and clear of all encumbrances for labor, work or material used on or in connection with the drilling of the well; that the oil company shall have casing on the location in sufficient quantities so that contractor shall not be delayed in the prosecution of the drilling of the well, and the company agrees to pay the contractor the sum of $50 per day for each day of delay in drilling caused by the company, provided, that, if the delay is caused by some act over which the company has no control, then the company shall not be liable for the payment; and, where the company purchases casing of a standard make used extensively in the Butler county oil fields; and, where a delay of 56½ days occurs in connection with a fishing job, caused by a latent defect in the casing which could only have been discovered by use, *held,* that the company is not chargeable with the delay, and not liable for expenses of the fishing job.

2. SAME—*Unambiguous Contract—Evidence of Custom Incompetent.* Where a drilling contract was not ambiguous, but was definite and certain in its terms, it was not error for the court to reject evidence of an alleged custom that would have altered or changed its terms.

3. SAME—*Certain Evidence Tendered Properly Rejected.* Under circumstances related in paragraph 1 of the syllabus, it was not error for the court to reject evidence of the contractor and his assistants that a representative of the oil company was acting as superintendent and stated that, "It was a company job," not having tendered any proper testimony that such representative had authority to change the contract or to make one for his company.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed February 10, 1923. Affirmed.

*Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, Forest D. Siefkin,* and *James G. Norton,* all of Wichita, for the appellant.

*George Gardner, K. W. Pringle,* and *George Austin Brown,* all of Wichita, for the appellee; *B. R. Leydig,* of El Dorado, of counsel.

The opinion of the court was delivered by

HOPKINS, J.: Plaintiff and defendant entered into a contract by which plaintiff agreed to drill an oil well to a depth of 3,000 feet "unless oil or gas is found in sufficient quantities at a lesser depth."

When the drilling had reached a depth of 2,250 feet, and while 6⅝-inch casing was being run into the hole, the casing parted, letting all the pipe, except the top joint, fall into the hole. The parting of the casing was caused by a defective collar which was already screwed onto the joint of pipe when it came from the factory and was brought to the well. There was testimony showing that the collar had not been screwed on properly at the factory; that there was rust between the threads of the collar and threads of the pipe, which indicated that the threads had not properly meshed.

The plaintiff spent fifty-six and one-half days fishing out the casing and getting the hole in condition to resume drilling operations. He sued to recover expenses of the fishing job. Judgment was for defendant, and plaintiff appeals.

The contract was, in part, as follows:

"Second party (plaintiff) agrees to drill said well to a depth of three thousand (3,000) feet unless oil or gas is found in sufficient quantities at a lesser depth and in that case first party shall have the right to terminate this contract and stop drilling of said well at a depth where such oil or gas is found.

"Second party agrees to drill the said well for the sum of $2.50 per foot for the actual number of feet drilled, whether the same is drilled to the depth of three thousand (3,000) feet, or whether stopped by first party before such depth is reached, and second party agrees to furnish all labor, tools (except under-reamers) and perform all acts in a good and workmanlike manner that is necessary to drill the above well, except such acts and conditions as first party hereinafter agrees to perform.

"Second party agrees to mud-off any gas or oil that may be found while drilling if same is unprofitable to operate, and when said well is completed said second party shall deliver the same to first party free and clear of all incumbrances for labor, work or material used on or in connection with the drilling of said well.

.     .     .     .     .     .     .     .     .     .     .     .     .     .     .     .

"First party (defendant) agrees, besides performing its part of the foregoing conditions of this contract, to furnish all fuel and water for the drilling of said well, same to be furnished at the location where said well is drilled.

"First party further agrees to have casing on the location in sufficient quantities so that second party is not delayed in the prosecution of the drilling of said well.

"First party agrees to furnish any union under-reamers free of cost, that second party may use in drilling said well, and shall keep said under-reamers in good repair as to slips and other parts, but second party is to furnish the labor while using said under-reamers, free of cost to first party.

"First party agrees to pay to second party the sum of $50 per day of twenty-four (24) hours, for each day of delay in drilling said well caused by first party: *Provided,* That if said delay is caused by some act over which

first party has no control, then said first party shall not be held liable for said payment."

The casing was purchased by defendant from a manufacturing concern which sells casing extensively throughout the oil field. It was delivered to plaintiff on the ground without examination by defendant. It is admitted that the defect was not discoverable by inspection. It could not have been discovered except by use.

Plaintiff contends:

1st. That defendant having contracted to furnish the casing, there was an implied warranty, on its part, that the casing was suitable for the purpose for which it was intended.

2d. That the trial court erred in rejecting evidence to prove a custom in the oil field that the company, and not the contractor, must bear the expense of a fishing job caused by defective casing.

3d. That the trial court erred in rejecting certain testimony offered to show that the superintendent of defendant directed plaintiff to do the fishing job.

The trial court sustained defendant's theory that, under the contract, it was not liable for the fishing job.

Plaintiff contends that the case of *Hickman v. Union Oil Co.,* 106 Kan. 555, 189 Pac. 391, is controlling in his favor in this case. We do not concur in that view. In the Hickman case the contract provided that the contractor should inspect the machinery, rig, casing and other appliances furnished by the defendant (oil company) with which to drill the well; that if the contractor did not make such inspection or notify the owner (oil company) of any defect discovered in the machinery, rig, casing or other appliances, the contractor should be deemed to have assumed all risk and responsibility for any mishap, except that caused by any defect impossible to detect.

Construing this contract, the court said:

"Under this provision of the contract, the plaintiffs, if they failed to make the inspection required, were liable for the consequences, but if they did make such inspection and were unable to detect any defect, although one existed, the defendant was liable for the consequences of that defect." (p. 557.)

The contract in the instant case contained no such provision. It did, however, contain this provision: "First party (defendant) agrees to pay to second party (plaintiff) the sum of $50 per day of twenty-four (24) hours, for each day of delay in drilling said well caused by first party. Provided, that, if said delay is caused

by some act over which first party has no control, then said first party shall not be held liable for said payment."

In the Hickman case the contract provided that the oil company should be liable for latent defects. Not so in the instant case. The question here seems to turn largely on the language of the contract as to whether the delay was caused by some act over which the defendant had no control. The plaintiff urges, with great energy and ability, that there was an implied warranty on the part of the defendant that the casing would not be defective. Many authorities from various jurisdictions are cited to uphold its theory. It argues that, because defendant furnished the casing for use in the well, it should be bound by the same rule as is the manufacturer who manufactures machinery, or other articles, for a specified purpose. We cannot adopt its theory. The doctrine of implied warranty is grounded upon the assumption that the manufacturer has some means of knowledge, sources of information in regard to the article manufactured, and opportunities of inspection which are not accessible or are unknown to the purchaser.

The defendant in this case is not a vendor, nor is the plaintiff a vendee. Both parties knew, must necessarily have known, and plaintiff concedes, that the defendant was without means of ascertaining the condition of the casing as much as plaintiff was.

The plaintiff contends the relations of the parties were analogous to those of manufacturer and purchaser. In our opinion they are more nearly analogous to the relations of a vendor, who is not a manufacturer, and a purchaser, whose knowledge of the article is equal to that of the vendor. In this case the defendant was a purchaser. It had no better opportunity to know of any defect in the casing than had the plaintiff.

Plaintiff also contends that this case is analogous to those cases where the builder prepared plans and specifications which had in them some inherent defect which caused damage or delay in the construction, some defect for which the contractor could not in any wise be held liable. We have examined these cases, but cannot see any application to the facts in this case. It was evidently the intention of the parties that defendant should not be liable for any delays except those that might be directly attributable to it. This is especially emphasized by the two clauses of the contract: the first, "That when the well is completed said second party (contractor) shall deliver the same to first party (oil company) free and clear of all encumbrances for labor, work or material used on or in

connection with the drilling," and second, "That if said delay is caused by some act over which first party (defendant) has no control, then said first party shall not be held liable for said payment."

Plaintiff concedes that defendant could not have known, by inspection or otherwise, of the latent defect in the casing. If it could not have known, how could it have controlled the delay caused by the defect? The contract is not ambiguous. It is definite and certain in its terms. It specifically provides, that, if the delay is caused by an act over which it has no control, the defendant shall not be liable. In the Hickman case the contract made the defendant liable for a latent defect. In the instant case the contract relieves defendant of liability for delay caused by the latent defect.

Our construction of the contract disposes of the other questions. The contract being sufficient in itself, so far as the fishing job was concerned, evidence of a custom which might have changed its terms, was properly rejected.

In *Henderson v. Petroleum Co.*, 104 Kan. 653, 655, 180 Pac. 228, it was said:

"There was nothing ambiguous, or uncertain, or indefinite about the terms of the contract. Who should be responsible for the loss of the drillers' tools in case fire occurred was something entirely collateral to the contract. It was not necessary to agree upon that in order to make effective the contract for drilling the well. The proper office of usage or custom is to explain technical terms in contracts, or to make certain that which is indefinite, obscure, or ambiguous. (*McSherry v. Blanchfield,* 68 Kan. 310, 75 Pac. 121.)"

In *Hopper v. Sage*, 112 N. Y. 530, it was said:

"Usage and custom cannot be proved to contravene a rule of law or to alter or contradict the express or implied terms of a contract free from ambiguity, or to make the legal rights or liabilities of the parties to a contract other than they are by the terms thereof. When the terms of a contract are clear, unambiguous and valid, they must prevail, and no evidence of custom or usage can be permitted to change them. (*Markham v. Jaudon,* 41 N. Y. 236; *Bradley v. Wheeler,* 44 id. 495; *Baker v. Drake,* 66 id. 518; *Colgate v. Penn. Co.,* 31 Hun, 297-299.)" (p. 535.)

Statements of the plaintiff and his assistants that H. E. Preston was the company's superintendent and made statements in their presence that "It was a company job," were properly rejected, no proper testimony having been tendered that Preston knew the terms of the contract; had any authority to change them; or to bind the company in a new contract.

We discover no reversible error. The judgment is affirmed.