## NUMBER ONE OIL CO. v. WILCOX.

No. 12209—Opinion Filed May 29, 1923.

Rehearing Denied Oct. 16, 1923.

(Syllabus.)

### 1. Customs and Usages — Evidence—Affecting Written Contracts.

There must be ambiguity or uncertainty upon the face of a written contract, arising out of the language used by the parties, in order to justify extraneous evidence of usage and custom, and where such evidence is admissible, it must be limited in its effect to the clearing up of the obscurity. It is not admissible for the purpose of adding to or engrafting upon the contract new stipulations, nor to contract or vary those which are plain.

### 2. Same.

Proof of usage and custom is inadmissible where there is no ambiguity or uncertainty in the terms of a contract, and the condition sought to be annexed was not by way of explanation or interpretation, but in addition to the contract.

Error from District Court, Wagoner County: E. A. Summers, Judge.

Action by H. H. Wilcox against Number One Oil Company to foreclose mechanic's lien. Judgment for plaintiff, and defendant brings error. Affirmed upon condition of remittitur; otherwise, reversed and remanded.

Chas. E. Barrett (H. G. Baker, J. W. Watts, and C. G. Watts, of counsel), for plaintiff in error.

John C. Graves and Campbell, Leahy & Brewster, for defendant in error.

NICHOLSON, J. On the 3rd day of February, 1919, the Number One Oil Company and H. H. Wilcox entered into the following drilling contract:

"This contract, made and entered into this the 3rd day of February, 1919, by and between H. H. Wilcox, of Leonard, Okla., first party, and the Number One Oil Company, a corporation, second party.

"Witnesseth:

"That the first party, for the consideration hereinafter set forth hereby agrees to furnish all the necessary tools and equipment and to furnish and perform all the labor necessary for the drilling of a certain well to be drilled on the following described real estate situated in Wagoner county, state of Oklahoma, to wit: lots three (3) and four (4) and the southeast quarter of the northwest quarter of section 2, twp. 16, R. 14.

"The said first party agrees to commence the work above mentioned and to diligently prosecute the same to completion as rapidly as may be done, strikes, fires and accidents beyond the control of said first party and delays incident to the furnishing of material by second party alone excepted. It is agreed that said work is to be commenced as soon as the rig is constructed as hereinafter provided and said well is to be drilled to a depth of sixteen hundred (1,600) feet, unless oil or gas or either of them be discovered in said well at a lesser depth. Said party agrees to pay all bills and expenses for such labor which may be incurred by him and for repairs or additions to his tools so that no liens therefor may accrue against the leasehold interest of the second party.

"The second party herein agrees to furnish on the said property above described, a standard rig and all necessary fuel, water and casing, the same to be furnished at such times as not to delay the operations of the first party. It is understood that the following is the casing deemed necessary for the proper progress of this work, to wit: Two joints of 10-inch, 600 feet of 8-inch, and 1,500 feet of 6 5-8, the above being the usual amount of casing required in the field where this work is to be performed.

"The said second party further agrees to pay the first party as consideration for the work to be performed under this contract the sum of $1.50 dollars per foot, the same to be paid immediately upon the completion of this contract by the first party herein.

"The first party agrees to set all casing necessary during the progress of the work and further agrees to drill into the sand only after notice to and under the direction of the second party.

"After completing the well in accordance herewith, the first party agrees, if desired by the second party, to furnish the tools and do the work necessary for cleaning, shooting and equipping said well for the sum of $40 per day so long as may be required by the second party."

In accordance with the terms of this contract, Wilcox entered upon the lands described and began drilling a well thereon. When the well had reached the depth of approximately 1,320 feet, a sand was encountered which was believed to produce oil. At this depth the well was being drilled with an 8-inch bit. When this supposed oil sand was found, the hole was reduced to 6 inches and the sand drilled through. The sand proved to be nonproductive, and the representative of the oil company directed Wilcox to drill deeper. In order to do so, it was necessary to ream the well to 8 inches; the amount of reaming necessary being about 60 feet. During the progress of this work, a bailer was lost in the well, which the plaintiff, Wilcox, was unable to recover, and he proceeded to drill it out. This work occupied about 6 weeks' time.

The well was completed to a depth of 1,606 feet, and the company gave Wilcox its check for the sum of $2,409 in payment of said drilling. Wilcox refused to cash the check because it had indorsed thereon that it was in full payment for all bills to date, whereupon Wilcox filed a mechanic's lien upon the leasehold and the improvements thereon for the sum of $5,574; $3,165 of this amount being for reaming at $40 per day, for the bailer lost, and for fuel furnished, and the remaining $2,409 for drilling 1,606 feet at $1.50 per foot.

This action was brought by Wilcox for the recovery of the amount claimed and the foreclosure of said mechanic's lien. The plaintiff basing his claim for the recovery in excess of the contract price upon the usage and custom in the oil fields, which he alleged were impliedly incorporated in the contract, and which were that in the event sand was encountered during the drilling operations by him at a lesser depth than 1,600 feet, and notice thereof given the defendant, said defendant should then direct what

further action should be taken to said well and should be responsible for the well during the continuance of operations under the plaintiff's supervision, and should pay for said operations at the rate of $40 per day for 12 hours.

He alleged that in pursuance of said contract he drilled said well to a depth of approximately 1,320 feet and encountered sand, and thereupon notified the company thereof, and that the company thereafter became responsible for the further operations, and all work done thereafter was done on the time of the company, and under the terms of the contract and said usage and custom the company was indebted to him for said work at the rate of $40 per day for work done from April 7, 1919, to and including May 26, 1919, together with the other items of expense set out in said lien statement.

The defendant in its answer relied on the contract and pleaded payment of the sum of $2,409 by check, and averred that said sum was all that was due and owing by it to the plaintiff.

The plaintiff replied, alleging that said check had not been cashed by him, and that he held it subject to the order of the defendant.

A trial resulted in a verdict in favor of the plaintiff for the sum of $5,414, judgment was duly entered for this sum, as well as for the sum of $400, attorney fees, and foreclosing said lien, from which judgment the oil company has appealed.

Various grounds for reversal are urged, but the only question which can be considered by this court is the action of the trial court in admitting certain evidence on behalf of the plaintiff over the objection of the defendant.

The sufficiency of the petition upon which to base the judgment was not challenged in the trial court in any manner, neither were there any exceptions saved to any of the instructions given by the court, nor to the court's refusal to give the instructions requested by the defendant, and the sufficiency of the evidence was not challenged in any way, so these questions are not before us.

The only question presented for determination is whether or not the trial court erred in admitting evidence of the usage and custom in the oil field to establish the liability of defendant for the sum claimed in excess of $1.50 per foot, the contract price, for the drilling of the well.

The language of the contract is neither technical nor ambiguous and by the terms thereof Wilcox agreed to drill the well to a depth of 1,600 feet, unless oil or gas or either of them was discovered in said well at a lesser depth, for the sum of $1.50 per foot, and further agreed to drill into the sand only after notice to and under the direction of the company, and after completing the well in accordance with said contract, to furnish the tools and do the work necessary for cleaning, shooting, and equipping the well for the sum of $40 per day so long as required by the company.

As a general rule, there must be ambiguity or uncertainty upon the face of the written instrument, arising out of the terms used by the parties, in order to justify extraneous evidence of usage and custom, and when such evidence is admissible, it must be limited in its effect to the clearing up of the obscurity. It is not admissible in order to add to or engraft upon the contract new stipulations, nor to contradict, alter, or vary those which are plain. Oelricks et al. v. Ford, 23 How. (U. S.) 49, 16 L. Ed. 534; Partridge v. Phœnix Mutual Life Ins. Co., 15 Wall. (U. S.) 573, 21 L. Ed. 229; Dewitt v. Berry, 134 U. S. 306, 33 L. Ed. 896.

By the admission of the evidence complained of, the court permitted the plaintiff to engraft upon and add to the contract of the parties a new stipulation which differed materially from the written one under which they acted, and which added stipulation increased the liability of the company to Wilcox from $2,409, the contract price for the well, to $5,414. This evidence should have been rejected. There is no ambiguity or uncertainty in the terms of the contract, and the condition sought to be annexed was not by way of explanation or interpretation of such contract, but in addition thereto.

Obviously, the parties did not contract with reference to a usage or custom which would work this change in the plain terms of their express contract, but rather, it would seem that the very object of the contract was to avoid the effect of the alleged usage. To extend the doctrine urged to the length permitted in this case, and thereby add to the contract a stipulation not in contemplation of the parties when the contract was made, is neither consistent with authority nor the principles which govern the law of contracts.

The plaintiff does not rely upon any subsequent contract whereby the defendant agreed to pay for reaming the well in addition to the contract price, but bases his right to recover solely upon the usage and custom testified to by his witnesses, which he insists were embodied in the contract as fully and completely as though they were written

therein. But, as hereinbefore indicated, we do not agree with this contention.

It appears that the plaintiff furnished fuel to the amount of $40, and for this he should be paid.

It is therefore ordered that if the defendant in error, within 30 days from the date of the receipt of the mandate herein by the trial court, files a remittitur of all of said judgment in excess of $2,449, and interest thereon from the date of the judgment at the rate of 6 per cent. per annum, and the attorney fees as fixed by the court, the judgment as thus modified will be affirmed; otherwise, the judgment is reversed, and the cause remanded, with directions to grant a new trial.

JOHNSON, C. J., and COCHRAN, BRANSON, and MASON, JJ., concur.