[No. 3467. Aug. 27, 1930.]

[Rehearing Denied Dec. 30, 1930.]

SMITH v. MALJAMAR OIL & GAS CORPORATION

J. D. Atwood and Howard C. Buchly, both of Roswell, for appellant.

E. P. Bujac and Caswell S. Neal, both of Carlsbad, for appellee.

OPINION OF THE COURT

WATSON, J.

Suit upon an oil drilling contract. It was oral, and, as stated in appellant's brief, provided as follows:

"* * * the contractor Smith was to drill the well to a depth of 3,500 feet for the price of $4.50 per foot, and $5.00 per foot beyond 3,500 feet; that the well was to be drilled in a good and workmanlike manner and the plaintiff was to furnish all necessary tools and labor; that the defendant was to furnish the casing, the drilling rig, the water and the fuel, and was to pay $75.00 per day for day work."

Plaintiff was paid for the depth attained at the specified rate per foot, and also for some "day work." The disputed question was whether certain work done entitled plaintiff to extra compensation as for "day work," or was embraced in his undertaking to drill the well in a workmanlike manner. The judgment, following a jury's verdict, resolved this question in plaintiff's favor, and defendant has appealed.

The work in question was an attempt to underream, unsuccessful because the tool hung in the casing, and necessitating pulling the casing, straight reaming for 20 feet, and resetting the casing at this lower depth. Eight-inch casing had been set at 2,900 feet. At about 3,100 feet gas was encountered. Drilling continued to 3,200 feet, where 6⅝ inch casing was set; whether at appellant's order being one of the disputed questions. The attempt at under-

reaming, with its consequences, was occasioned by the necessity of stopping a leak of gas into the hole when drilling was resumed after the smaller casing had been set.

Appellee admitted that there was no special or express agreement, either when he undertook the drilling job or when he performed the work in question, that it was to be considered "day work." He relied for recovery upon an alleged custom of the industry, both local and general.

The trial court instructed that appellee relied upon custom, both local and general. He defined both terms. He further instructed that before the evidence of custom could be considered the jury must find that it was certain and uniform, and either known to the appellant or so generally known and recognized that knowledge of it should be presumed.

It is appellant's first contention here that the contract was plain and unambiguous and admitted of no proof as to custom. To the proposition that the terms of a contract cannot be varied by proof of custom, it cites Gooch v. Coleman, 22 N. M. 45, 159 P. 945; Romero v. Romero, 29 N. M. 667, 226 P. 652; Higgins v. Cauhape, 33 N. M. 11, 261 P. 813. As showing the application of the principle in oil drilling contracts, it cites Number One Oil Co. v. Wilcox, 95 Okl. 227, 219 P. 132; Hezlep v. A-1 Oil & Gas Co., 112 Kan. 661, 212 P. 881; Eldora Oil Co. v. Thompson (Tex. Civ. App.) 244 S. W. 505; Mills & Willingham, Law of Oil & Gas, § 202.

The principle contended for is not questioned. But, can it be said that the present contract is plain and unambiguous, or that the evidence of custom tends to vary any plain provision of it?

Certainly the parties contemplated the possibility of compensation per diem as well as per foot. Certain work was contemplated as included within the undertaking to drill in a workmanlike manner to the specified depth. Other work was contemplated not so included. The latter was to be paid for at $75 per day. The contract designated this as "day work." Since they employed the term, they must have meant something by it. It evidently belongs

to the terminology of the oil field. Courts and juries require an explanation of it.

It was appellee's theory, supported by some evidence, that appellant, desiring not to use more casing than necessary, and considering the formation at 3,200 feet favorable to effecting a shut-off of the gas, assumed to direct the setting of the casing at that point; and that this decision and direction resulted in the necessity for the unsuccessful attempt to underream, the pulling of the casing, the straight reaming, and the resetting of the casing.

Upon that theory, should the contractor or the operator pay the expense? If that question could be answered from the contract, then of course evidence of custom covering such a situation would be incompetent. We are not able to say that the contract plainly provides for such a situation. It seems one likely to arise in drilling. Experienced parties probably contemplated it. It being necessary to determine their intent in agreeing as they did, we think it was proper to show the existence of a custom, as evidence of such intent.

Appellant contends that the court erred in overruling its motions for judgment non obstante veredicto and for a new trial. Those motions, and the present contention, rest upon the proposition that the jury disregarded the instructions above mentioned.

It will be noted that the errors claimed are overruling the two motions after verdict; not the admission of evidence or the giving of instructions. It may be remarked that the instructions went without exception. Hence we view the instructions as the law of the case, and we interpret them liberally in support of the verdict. The only question is whether there is substantial evidence of custom.

It is pointed out that appellee admitted, as a witness, that the local field was so new that customs had not become fixed. Hence, it is argued, he did not make the contract in reliance upon any local custom. But, if this be true, there is still the question of general custom.

It is contended that it was disclosed by cross-examination that the other two witnesses, in their testimony as to

the existence of a custom, local or general, relied mainly upon experience or knowledge of transactions where the point here in question was covered by the express terms of a contract. Appellant assumes, without stopping to demonstrate, that this rendered the evidence valueless. We see no reason for so holding. The real proposition was that by general usage in the industry the term "day work" included such a case as this. Evidence that express contracts covering the point invariably so provide is scarcely less convincing than evidence that it is invariably so considered when the contract is silent upon the point. Three witnesses, disclosing a rather wide range of experience and knowledge, testified to the existence of a general custom. We think the jury was within the evidence and the instructions in finding as it did.

The judgment will be affirmed, and the cause remanded. It is so ordered.

BICKLEY, C. J., and SIMMS, J., concur.

PARKER and CATRON, JJ., did not participate.