356 P.2d 46

Martha J. TIPTON, Administratrix of the Estate of Elbert A. Tipton, Deceased; Dorothy T. Carran, Administratrix of the Estate of Joe Lewis Green, Deceased; and J. S. Jeffreys, Plaintiffs-Appellees,

Royal Indemnity Company, Intervening Plaintiff-Appellee,

v.

J. C. CLOWER, d/b/a Clower Drilling Company, Defendant-Appellant.

No. 6562.

Supreme Court of New Mexico.

Oct. 13, 1960.

Ray C. Cowan, Hobbs, Seth, Montgomery, Federici & Andrews, Santa Fe, for appellant.

William J. Heck, Hobbs, for appellees Tipton and Carran.

Mack Easley, Hobbs, Smith, Johns & Neuffer, Oklahoma City, Okl., for appellee Jeffreys.

Atwood & Malone, Roswell, for appellee Royal Indemnity Co.

CARMODY, Justice.

Appeal from jury verdicts and judgments in favor of the plaintiffs in three consolidated cases.

The questions involved on appeal relate to the relative responsibilities and liabilities to third persons of a contract oil well driller and the owner at the time when the actual drilling had been substantially completed but the well was not made entirely ready for production.

This is the foundation case out of which Royal Indemnity Co. v. Southern Cal. Petroleum Corp., 1960, 67 N.M. 137, 353 P.2d 358, also arose. However, except for the fact that Royal Indemnity Company is a party to both cases, there is no similarity from a factual or legal issue standpoint.

The case may seem complicated because in the court below there were a great many parties involved. In the interest of clarity, we will designate the parties and other persons or corporations interested in the following manner. The defendant and appellant, J. C. Clower, d/b/a Clower Drilling Company, as "Clower"; the three plaintiffs and the intervening plaintiff, Royal Indemnity Company, all having identical interests, will be designated as "plaintiffs"; in addition, Southern California Petroleum Corporation, one of the defendants below and the well owner, will be called "Southern California"; and B. J. Service Company, an oil well cementing contractor and a third party defendant below, as "B. J. Company." It should be noted, however, that Southern California and B. J. Company are not parties to this appeal.

The pertinent facts are that immediately prior to August 17, 1957, Clower was drilling an oil well for Southern California, under a contract consisting of the following letter signed by representatives of both parties:

"This is an agreement to drill your Federal Bobb C No. I well in Sec. 13 T 20 S R 33 E, Lea County, N. Mex.

"I will furnish cable tool rig complete, fuel, water, pit and cellar, also approximately 75 feet of 13⅜ surface pipe, 600 feet of 10¾ pipe and 950 feet of 8⅝ pipe to dry the hole above the salt section. I will run and pull this pipe at my expense, it is not to be cemented.

"I will drill this well through the Yates pay zone or to 3375 feet.

"You agree to furnish road and location spread, 5½ pipe for the oil string, also cement and Halliburton services.

"Drilling to be at $4.00 per foot, day work at $220.00 per 24 hour day."

Clower drilled until August 16th, when ordered by Southern California's geologist to stop drilling because the hole was deep enough. Clower then had the 5½ inch oil string, furnished by Southern California, installed, and thereafter pulled the casing. The next step in the work was to cement the pipe in place, and to do this Southern California employed the B. J. Company. Inasmuch as there was going to be some additional work for Clower to do after the cementing process was completed and the cement dried, Clower's employees and equipment stood by to do what might be necessary, this principally consisting of the raising of the pipe off the bottom of the hole so that the cement would circulate. In addition, at the time of the cementing process, the drilling rig and other equipment of Clower was being used, including lights used in night operations and necessary motors. B. J. Company commenced the cementing process shortly after midnight on August 17th, and after a portion of the work had been done, a fire broke out which instantly enveloped the area in flames, burning three of B. J. Company's employees, two to death and one seriously. The actual cause of the fire was undetermined, but apparently it resulted in some manner from the cement's forcing oil and gas upwards on the outside of the pipe so that when it reached the surface, for one reason or another, it ignited. Suits were brought by the plaintiffs, for the two deaths and for the injuries to the third employee, against Southern California and Clower. Immediately prior to the trial, Southern California took a joint tort-feasor's release from each of the plaintiffs, and thereafter trial was had, with Clower as the only remaining defendant. Substantial damages were recovered, the jury having determined that the fire was caused by the joint negligence of the employees of Southern California and employees of Clower. Such other facts as may be necessary for the decision will be discussed subsequently, but, in the main, the above brief summarization is

believed sufficient to properly understand the case.

Clower's initial contention on appeal is that, under the testimony, the trial court erred in failing to direct the verdict in favor of Clower and in denying Clower's motion for judgment notwithstanding the verdict. In this connection, Clower claims that the evidence, when considered as a whole, makes it clear that the negligence, if any, and the proximate cause of the accident was not that of Clower, but was that of either Southern California or B. J. Company. This is on the basis that when Clower was told to stop drilling by Southern California and Southern California then employed B. J. Company to do the cementing work, that thereby the drilling contract was partially accepted and that, at least during the period of the cementing operation, Southern California resumed complete control. Clower urges that the action of Southern California in going ahead with the work as they did was an intervening cause as a matter of law, which relieved Clower from liability.

It is urged that Southern California having resumed control over the property, that at least during the period of the cementing operations Clower's employees became the servants or special employees of Southern California, or, in any event, that the owner having knowledge of the existing conditions, that the contractor (Clower) is not liable to third persons employed by the owner when he is merely performing work under the directions of the owner.

From a careful examination of the extremely lengthy and involved record, there is certainly evidence which would warrant the giving of Clower's contention serious consideration. However, to the contrary, it must be said that the plaintiffs offered proof by which the jury, under proper instructions, would have been justified in finding that Clower's negligence, if any, either contributed to or was the proximate cause of the injuries to the plaintiffs. We do not deem it necessary to detail the testimony as to this claimed error. Suffice it to say that there is a definite conflict in the evidence. We are fully cognizant of the general rule as to the non-liability of an independent contractor after the acceptance of the work by the owner, and we are familiar also with the exceptions to this rule and the so-called "modern view." 13 A.L.R.2d 195; 58 A.L.R.2d 869; Wood v. Sloan, 1915, 20 N.M. 127, 148 P. 507, L.R.A.1915E, 766; Prosser, Torts, 2d ed., § 85. However, it should be noted that no two cases are identical, and the instant case must be determined on the basis of the proof, not on the adoption or rejection of legal theories.

Nevertheless, as a general guide for the trial court, it should be said that an independent contractor may be found to be liable to third parties who may have been

foreseeably endangered by the contractor's negligence, even after acceptance of the work. The above must be limited to the extent that the contractor should not be liable if he merely carefully carried out the plans, specifications and directions given him, at least where the plans are not so obviously dangerous that no reasonable man would follow them and further be limited to the extent that if the owner discovers the danger, or it is obvious to him, his responsibility supersedes that of the contractor. See Prosser, supra, at 519, and Russell v. Arthur Whitcomb, Inc., 1956, 100 N.H. 171, 121 A.2d 781. It should be remembered that the application of the rule may be affected when consideration is given to the status of the third person, i. e., whether invitee, licensee, or some other type of relationship. Further reference to an instruction on the status of the plaintiffs will be made in the closing paragraphs of this opinion.

■ Although there is a great deal of evidence to the contrary, there is testimony in the record which would warrant the case's going to the jury for their determination as to whether there had been a completion or acceptance of the work, whether Southern California had complete supervision and authority during the cementing process, and whether Southern California, as owner, knew or could have discovered upon reasonable inspection the dangerous condition, if such existed. Compare Standard Ins. Co. v. McKee, 1947, 146 Tex. 183, 205 S.W.2d 362; and Gulf Oil Corporation v. Wright, 5 Cir., 1956, 236 F.2d 46.

■ It should be noted that the drilling contract fixed the status of the parties without regard to what may have been the customs and practices in the community, insofar as the contract covered these particular items. Therefore, testimony as to custom and practice cannot be used to vary the express terms and conditions provided in the contract. Gooch v. Coleman, 1916, 22 N.M. 45, 159 P. 945; and Romero v. Romero, 1924, 29 N.M. 667, 226 P. 652. However, where the contract is silent, as this one, with regard to standby services and certain other matters, testimony as to customs and practices as to those particular matters only is admissible, Smith v. Maljamar Oil & Gas Corp., 1930, 35 N.M. 255, 293 P. 967, and, when coupled with specific testimony, though conflicting, that Clower's employees were actually at the location performing other duties than acting in a standby capacity, there is sufficient evidence upon which the jury could base a verdict. Therefore, we agree with the trial judge that the motions by Clower should have been overruled. See 55 Am.Jur. 290, § 30.

Clower next claims that the trial court erred in its instructions to the jury, instructing them that if they found either Southern California or Clower were jointly

or concurrently negligent, that they would not be permitted to find one negligent and the other free therefrom. Allied to this contention of error is Clower's assertion that the trial court failed to instruct the jury on Clower's theory of the case that the negligence of Southern California was the sole proximate cause of the accident, and the court's failure to instruct the jury on the relative duties as between licensor and licensee, together with the requested instructions on the fact that Clower's employees became the special employees of either Southern California or B. J. Company.

While recognizing the danger inherent in over-simplification, it is believed that the primary question involved under this claim of error is whether Clower was at the time of the accident acting as an independent contractor, or was acting as an agent or servant of Southern California or perhaps of B. J. Company. See Standard Ins. Co. v. McKee, supra. This has to do, at least in part, with the question of whose work was being done and who had the power to direct the details of the work. See Restatement of the Law, Torts, Vol. II, § 414. It would appear that the plaintiffs do not complain of any defect in the well as to the manner in which it was drilled. However, they do claim that the accident resulted from the use of defective machinery belonging to Clower, combined with Clower's failure to advise the employees of B. J. Company of the dangerous gaseous condition and the failure of Clower to furnish necessary safety equipment.

With respect to the claimed defective machinery and the failure to furnish necessary safety equipment, it may be said that the plaintiffs contend that Clower was responsible for the failure to put a Bradenhead or wellhead control on the well prior to the commencing of the cementing process; that Clower, instead, used what is termed a "poor boy blowout preventer."

It is clear from the contract that Clower was to pull the casing pipe prior to the cementing. It is also clear, under the testimony and from a practical standpoint, that any suggestion that the failure to use a Bradenhead was Clower's negligence is erroneous. A Bradenhead can only be used if it is attached to the outer casing, and, therefore, under the present contract, the casing having been pulled, Clower could not have attached the same if he had desired. Therefore, if it was negligence in failing to utilize a Bradenhead, such negligence must be that of Southern California, not Clower. Clower could not have utilized such a piece of equipment without violating his contract.

As to the defective machinery, plaintiff urges that Clower failed to use safety lighting and used light bulb sockets which shorted; that there was an uncovered ditch and cellar under the well rig with an open

and unprotected hole; that Clower failed to furnish floodlights to adequately brighten the night cementing operations; and that there was fire jumping from the spark plugs on the drilling rig power unit.

Admittedly, the evidence is in conflict with respect to these claimed items of negligence, but they must be considered in the light of the situation at the time, and the questions of who had control of the operation and who was responsible for its direction must be resolved. Clower, of course, urges that, during the actual cementing operation, its crew was merely on a standby status and was subject to the orders of Southern California or B. J. Company, and that Clower had no power to direct the details of the work, other than raising the pipe off the bottom of the well so that the cement would circulate. The plaintiffs, to the contrary, argue that the equipment was being used somewhat as a joint operation, and that the mere intervention of the cementing contract did not change Clower's status, nor relieve him from liability for his negligence.

■ The trial court took the view that the basic controversy was whether the well was negligently drilled. On this basis, the jury were instructed that they must find that if either Clower or Southern California were negligent, that thereby they both were negligent, or, in the alternative, that neither was negligent. By another instruction, the jury were also told that any one act of negligence by either defendant proximately causing the injuries would be sufficient to sustain a verdict for the plaintiffs. These instructions, when considered with the instruction also given by the court that Southern California had compromised with the plaintiffs (although the jury were told that they could not weigh this as against Clower), are error.

From a factual standpoint, considering the voluminous testimony, it would appear that the jury could have determined that the sole responsibility for the tragedy was that of Southern California, or Clower, or both, but, as instructed, no contemplation could be given to the other alternatives. In view of this, it takes little imagination to understand how an average jury would react, particularly after being told that one party had, what is termed in common parlance, "admitted liability." Although plaintiffs rely on the cases of Oklahoma Ry. Co. v. Boyd, 1929, 140 Okl. 45, 282 P. 157, and Cockerham v. R. E. Vaughan, Inc., Fla. 1955, 82 So.2d 890, to justify the giving of the questioned instructions, these cases are not in point when applied to the facts here present.

In giving the instructions complained of, the court also refused to instruct on Clower's theory of the case, this theory being that the negligence of Southern California was the sole proximate cause of the accident and that Clower was not negligent.

Examples of the negligence of Southern California, apart from any claimed negligence of Clower, include the determination by Southern California to proceed with the next step in completing the well by ordering the cementing operations after the drilling had reached the required depth and Clower was ordered to cease further drilling. At this moment, there was no evidence of any particularly dangerous condition, other than that which is inherent to the drilling of all oil wells and known to all those who work in the fields. At this time, Southern California had knowledge of all the facts which were available to Clower, and its ordering the cementing company to proceed was a power and responsibility resting entirely with Southern California. From these facts, the jury could have determined that Clower was not negligent, even though Southern California was. Further, with respect to the cementing process itself, Southern California as the owner and B. J. Company determined what kind of cement was to be pumped into the hole and how it should be done. Clower had nothing to do with this. Clower had no obligation under its contract with respect to the installing of a Bradenhead or what equipment was to be attached to the 5½ inch pipe. Yet, under the instructions as given, these items, if considered as negligence of Southern California by the jury, must have been determined to have been the negligence of Clower also.

In failing to instruct as requested, the trial court fell into additional error. A party has the right to have his theory of the case go to the jury under proper instructions. Stewart v. Oberholtzer, 1953, 57 N.M. 253, 258 P.2d 369; and Armijo v. National Surety Corp., 1954, 58 N.M. 166, 268 P.2d 339.

We do not deem it necessary, in view of our disposition of the case, to either approve or disapprove the instructions that Clower requested on this subject. Suffice it to say that, on a subsequent trial, if proper instructions as to the law applied to the facts in evidence are tendered, they must be given.

A factual matter must be mentioned in order to clarify the situation in part. When B. J. Company moved its trucks and equipment onto the location, it was by contract between it and Southern California, and Clower had nothing whatsoever to do with either the employment or the contract. B. J. Company's equipment was attached to the production pipe, and prior to commencing the actual cementing process, B. J. Company pumped about fifty barrels of water into the pipe, this being followed by the cement, and all of this being forced out of the bottom of the pipe and returned to the surface on the outside of the pipe. In such a process, it is quite natural that any oil and gas, or the materials standing in the hole, would be forced to the surface ahead of the cement. Other than the use of the rig to raise the pipe and the use of

the other Clower equipment, there was apparently little for Clower employees to do during this process, except to observe. Under these circumstances, Clower claims that the relationship between itself and B. J. Company was that of a licensor and licensee, and that Clower's only duty was to not wilfully and wantonly injure them. It was not contended that the injuries were wilful or wanton, and therefore Clower was entitled to have the jury pass upon the question of the relationship between Clower and the employees of B. J. Company, and the court should have instructed as to the duty owing between a licensor and licensee. See Chavez v. Torlina, 1909, 15 N.M. 53, 99 P. 690; Snider v. Town of Silver City, 1952, 56 N.M. 603, 247 P.2d 178; and Jones v. George F. Getty Oil Co., 10 Cir., 1937, 92 F.2d 255. The court properly instructed as to the duty owing to an invitee, in accordance with plaintiffs' theory, but the duty owing to a licensee varies considerably therefrom and is not covered by any instruction. The jury should have had the benefit of the definitions of both "licensees" and "invitees" and the rules applicable to each, in order that they might apply the same to the facts of this case. See Scalise v. F. M. Venzie & Co., 1930, 301 Pa. 315, 152 A. 90; Meny v. Carlson, 1950, 6 N.J. 82, 77 A.2d 245, 22 A.L.R.2d 1160; and annotations, 32 A.L.R.2d 414 and 20 A.L.R.2d 868.

So, also, under the testimony, it would appear that there was a serious contention on the part of Clower that its employees became either the special employees of Southern California or B. J. Company. Again, the court refused to consider the tendered instructions, and we believe that on a retrial, proper instructions on this phase of the case, if tendered, should be given by the court. See Jones v. George F. Getty Oil Co., supra; Dunham v. Walker, 1955, 60 N.M. 143, 288 P.2d 684; Weese v. Stoddard, 1957, 63 N.M. 20, 312 P.2d 545; and Huff v. Dunaway, 1957, 63 N.M. 121, 314 P.2d 722.

Serious consideration has been given to the many authorities cited by the plaintiffs, and in particular those cases from this jurisdiction, but we deem the same, other than those mentioned in this opinion, as not in point or not persuasive, by reason of the very involved factual issues in the instant case.

In view of what has been said, therefore, the case will be reversed and remanded to the trial court, with instructions to grant a new trial and to proceed thereafter in a manner consistent with this opinion.

It is so ordered.

COMPTON, C. J., MOISE, J., and HARRIS, D. J., concur.

CHAVEZ and NOBLE, JJ., not participating.