---

**EARLY BIRD OIL CO., Inc., v. DAILEY.**

No. 11653—Opinion Filed Dec. 8, 1925.

**1. Appeal and Error—Review of Evidence —Conclusiveness of Judgment.**

The judgment of a court in a law action, if there is any testimony reasonably tending to support the same, will not be reversed on appeal.

**2. Same—Judgment Sustained.**

Record examined: held, to support judgment in favor of the plaintiff.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by T. F. Daley against the Early Bird Oil Company for damages. Judgment for plaintiff. Defendant brings error. Affirmed.

Owen, Yancey & Fist, for plaintiff in error.

C. F. Chapman, for defendant in error.

Opinion by STEPHENSON, C. T. F. Daley commenced his action against the Early Bird Oil Company for damages, on account of the loss of drilling tools by the plaintiff in the course of drilling an oil and gas well for the defendant. The plaintiff alleged in substance: (1) That an oral contract was entered into between the parties to this action whereby the plaintiff became bound to drill an oil and gas well for the defendant, to a certain depth, at a given sum per lineal foot, unless oil or gas should be found in paying quantity before reaching the given depth. (2) It was further agreed between the parties that the plaintiff should shoot the well under the direction of the defendant, and clean out the same at the rate of $35 per day, for daylight work.

The plaintiff alleged that it was the usage and custom in contracting between lease owners and drilling contractors, that the owner of the well should be liable for the loss of tools while shooting and cleaning the well. The plaintiff alleged further that after shooting the well and while cleaning it, a fire destroyed the tools of the plaintiff on account of the derrick being burned. A jury was waived and the cause was tried to the court. Mr. Chapman, attorney for the plaintiff, dictated the following stipulation into the record at the commencement of the trial:

"It is stipulated and agreed in open court by and between the parties hereto, that the only dispute and question of fact in this case is the question of what the custom and practice in the oil fields is with reference to the loss of tools, as applied to the facts in this case and the allegations in the petition".

In the course of the trial of the cause upon the question of the admissibility of certain testimony, Mr. Daugherty, attorney for the defendant, made the following statement to the court, in relation to the issue before the court for trial:

"If your honor please, the question of whether or not they assumed control has been left out of this case by stipulation. The stipulation provides that we are to be liable in case there is a custom and usage in the oil fields that after the well is shot, the owner is then liable for loss of tools."

Mr. Daugherty, for the defendant, clearly stated that the issue for trial before the court was the existence of the usage or custom pleaded by the plaintiff as a basis for his recovery. The entire trial was directed to the question of the existence, or nonexistence, of the custom pleaded by the plaintiff. It appears from the evidence of the plaintiff that Mr. Adams, an associate of the plaintiff, and the defendant prepared a written instrument to cover the drilling of the well. The plaintiff testified that the written instrument was sent to him for his approval; that he declined to approve the contract for the reason that the writing provided that the defendant should not be liable for the loss of tools during the performance of the proposed contract. The written instrument covered the work to be performed by the plaintiff in shooting and cleaning out the well at the rate of $35 per day for daylight work.

The plaintiff further testified that he advised an officer of the defendant company that he would not enter into the written agreement for the drilling of the well, on account of the expressed provision to the effect that the driller should be liable for the loss of tools while shooting and cleaning the well. The plaintiff testified that he advised the officer of the company that he would drill the well under the usual contract relating to such work, which, according to usage and custom, provided that the owner of the well was liable for the loss of tools while cleaning the well. The plaintiff testified that the rate of $35 per day just about covered the actual expense involved in a day's work in cleaning the well after it was shot; that for this reason it had become the custom and practice among drilling contractors and the owners of wells for the latter to bear the expense of the loss of tools while cleaning the well. Two witnesses testified for the plaintiff to the effect that it was the general and established custom for the owners of the wells to be liable for the loss of tools while cleaning the well.

Mr. Wise, who testified for the plaintiff, was asked the following question on cross-examination:

"Q. Do you know, Mr. Wise, how far this custom extends? Does it extend to all losses of tools?"

The witness gave the following answer:

"A. It extends everywhere. It is a universal custom. Universal all over the country if you lose the tools in a well or anything like that, it is the company's loss".

The plaintiff was asked the following question on cross-examination by the defendant:

"Q. Have you ever found this custom extended to loss of tools by fire when not in the hole? A. Well, not directly. No, I have heard people speak of getting paid for tools that were burned up."

The rig which was being used by the plaintiff to drill the well was furnished by the defendant. A fire occurred during the the night, while the plaintiff was cleaning the well, which burned the rig and destroyed the tools used in drilling and cleaning the well.

The plaintiff testified that he discussed his objections to the written instrument with Mr. McMillan, president of the defendant company; that the parol contract for drilling the well was entered into with Mr. McMillan. Mr. Evans, an officer of the defendant company, testified for the defendant in the trial of this cause, and in no way contradicted the evidence of the plaintiff in relation to the latter's refusal to enter into the proposed written contract, and does not contradict the plaintiff's testimony in relation to entering into the parol contract. The witness did not deny the existence of the custom pleaded and proved by the plaintiff; the defendant did not offer any testimony denying the existence of the custom pleaded and proved by the plaintiff.

It was agreed and stipulated between the parties that the value of the tools destroyed by fire was $1,100. The trial court found that the custom pleaded by the plaintiff existed, and entered judgment for the plaintiff for the value of the tools destroyed by fire in the sum of $1,100. The defendant has appealed the cause here and assigns the following error for reversal: (1) That there is not sufficient evidence to support the finding of the court that the custom existed as pleaded by the plaintiff.

The existence of a usage or custom is a question of fact for the determination of the jury or the court. The court can only know of the existence or absence of a custom from the proof introduced in the course of a trial of a cause. It is well settled that usages and customs, followed by men in relation to certain business, become a part of contracts in relation to such matters, unless the customs are excluded by the contract by the parties. Marine Natl. Bank v. Natl. City Bank (N. Y.) 17 Am. Rep. 305; Rochester German Ins. Co. v. Peaslee-Gaulbert Co., 120 Ky. 752, 87 S. W. 1115, 89 S. W. 3; 9 Am. Cas. 324, 1 L. R. A. (N. S.) 364; Allegre v. Maryland Ins. Co., 20 Am. Dec. 424.

The defendant did not offer any evidence to deny the application of the custom to this case, as pleaded and proved by the plaintiff. The testimony of the plaintiff is to the effect that he refused to enter into a certain agreement with the defendant, which made the plaintiff liable for the loss of the tools while cleaning the well. The evidence of the plaintiff is uncontradicted upon the following propositions: (1) That a custom existed whereby the owner of the well is liable for the loss of tools while the drilling contractor is cleaning the well. (2) That the plaintiff advised the defendant he would not enter into the written contract which relieved the defendant from liability for the loss of the tools while cleaning the well. (3) That the plaintiff informed the defendant through its officers that he would drill the well on the basis of the usual contract for such work which embodied the custom as pleaded. The contention of the defendant that the judgment is not supported by sufficient evidence must fall for the reason that the main propositions established by the plaintiff were not contradicted by the defendant in the trial of the cause.

It is reasonable to assume that if the custom pleaded and proved by the plaintiff did not generally exist, the defendant would have offered some evidence to contradict the contention of the plaintiff in this respect. The plaintiff has establshed the existence of the custom without any contradiction upon the part of the defendant. The effect of the establishment of the custom by the plaintiff is to make such custom a part of the terms of the contract for drilling the well.

The plaintiff in error cites the case of No. 1 Oil Co. v. Wilcox, 95 Okla. 227, 219 Pac. 132, as authority for the reversal of this cause. It was said in the Wilcox Case:

"There must be ambiguity or uncertainty on the face of the written contract, arising out of the language used by the parties, in order to justify extraneous evidence of usage and custom."

The court had under consideration in the latter case the question of the application of a custom in connection with a written contract. If his case were here upon the written contract, which was submitted to the plaintiff for his approval in relation to drilling the well, we would reach the same conclusion as was applied in the Wilcox Case. The written form of contract which was submitted to the plaintiff for his approval in relation to this case, provided that the defendant should not be liable for the loss of tools while cleaning the well. It is clear that proof of a custom cannot be made

where the custom sought to be proved would vary the terms of the written contract, and charge one of the parties with a burden not contemplated by the contract. Parties may contract against the effect of custom ordinarily, applying in relation to the performance of certain obligations, and when they do so, the contract will be given effect. The instant case is quite different from the Wilcox Case. In the instant case, according to the undisputed testimony of the plaintiff, the latter refused to enter into a contract which relieved the defendant from liability for the loss of tools while cleaning the well. The difference between the instant case and the Wilcox Case is that in the latter case the custom of holding the owner liable for the loss of the tools was contracted against by the defendant. The plaintiff in this case refused to enter into such a contract, and according to his undisputed testimony entered into a contract to the effect that the defendant should be liable for the loss of tools, as he established the existence of the custom by his uncontradicted evidence.

The contention of the plaintiff in error is, that the trial court should have sustained its demurrer to the evidence, and that the overruling of the demurrer constituted reversible error. The effect of the defendant's demurrer to plaintiff's evidence was to admit all the facts which the evidence in the slightest degree tended to prove, and of inferences and conclusions which may be reasonably and logically drawn from the evidence. The rule placed the defendant in the attitude of admitting the existence of the custom as pleaded by the plaintiff, and that is applied in such cases for the reason that the plaintiff testified that it was the custom for the owner of the well to be liable for the loss of tools while cleaning the well. The defendant was in the attitude of admitting that the plaintiff declined to execute the written contract for the reason that it provided that the defendant should not be liable for the loss of the tools while cleaning the well. The defendant by interposing the demurrer to the plaintiff's evidence was in the attitude of admitting the truth of plaintiff's testimony to the effect that he advised the defendant that he would drill the well under the usual contract, which provided that the owner should be liable for such loss. In this state of the record, there was no other course for the court to follow than to enter judgment in the cause for the plaintiff. Anderson v. Pickens, 91 Okla. 92. 216 Pac. 100.

The judgment is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J., p. 879, § 2853; 2 R. C. L. p. 204; 1 R. C. L. Supp. p. 443; 4 R. C. L. Supp. 92; 5 R. C. L. Supp. p. 81. (2) 4 C. J. p. 1129, § 3122.