**SAMSON RESOURCES COMPANY, Appellant,**

v.

**QUARLES DRILLING COMPANY, Appellee.**

No. 68804.

Court of Appeals of Oklahoma, Division No. 3.

Jan. 31, 1989.

Rehearing Denied March 20, 1989.

Certiorari Denied Dec. 19, 1989.

R.K. Pezold & Mary B. Lewis, Brune, Pezold, Richey & Lewis, Tulsa, for appellant.

Sidney G. Dunagan, Gable & Gotwals, Tulsa, for appellee.

## MEMORANDUM OPINION

BAILEY, Judge:

Upon consideration of the briefs, exhibits and record in the above styled matter, the Court FINDS:

1. Appellant seeks review of judgment entered on jury verdict for Appellee. Appellant Samson Resources Company (Appellant, Samson or Operator) brought the subject action to recover actual and punitive damages arising from alleged breach of contract and loss of a certain oil and gas well allegedly due to the intentional and/or negligent acts of Appellee Quarles Drilling Corporation (Appellee, Quarles or Contrac-

tor). Appellee counter-claimed for breach of contract for failure to pay for services rendered and for sums due and unpaid. The Trial Court sustained Appellee's demurrers to Appellant's evidence of negligence, willful damage to property and fraud. The jury returned a verdict for Appellee.

2. Appellant entered into a standard International Association of Drilling Contractors agreement (the "contract") with Appellee to drill an oil and gas well. The contract allocated control of operations and risk of loss between the parties according to whether Appellee was drilling on a "footage" basis or on a "day work" basis: when on "footage," Appellee had control and bore liability for loss; on "day work," Appellant controlled operations and assumed liability for loss. An alleged "exculpatory" clause of the contract provided that the allocations of particular risks and losses delineated by the contract were "without limit and without regard to the cause or causes thereof, (including ...), ... the negligence of any party or parties, whether such negligence be sole, joint or concurrent, active or passive."

3. The contract also provided for a shift from "footage" to "day work" upon the happening of certain contingencies, particularly when "Formations Difficult or Hazardous to Drill" were encountered. Under that clause and in such an event, the contract required Appellee to exert "reasonable efforts" to overcome any difficulties, but also shifted risk of loss from Appellee as contractor on "footage" basis to Appellant as operator on "day work" status. The contract, however, did not make express provision for notice to Appellant of a change from "footage" to "day work" by Appellee under any circumstance.

4. Drilling began in January, 1983. On February 5, 1983, drilling cones were lost off of the bit, requiring cessation of drilling and several days of "fishing." Appellee apparently failed to clean the hole after "fishing." Mud engineers reported "cave-ins" in the well bore. Drilling operations resumed, but ceased due to stuck pipe on February 19. Appellee's assistant drilling superintendant apparently pumped a 100 barrel high viscosity "pill" into the hole. Within a few hours, the pipe stuck again. Appellee's drilling superintendant apparently admitted having gotten the pipe stuck and agreed to get it freed. More mud was pumped into the hole, apparently destroying the formation, and the pipe freed. Drilling rates slowed however, compounded by sticking pipe while "tripping" pipe in and out of the well. The drill pipe became irretrievably stuck on March 30, 1983, and the well was plugged and abandoned in late April.

5. The Trial Court found Appellant's evidence of Appellee's negligence, intentional damage and fraud insufficient and sustained Appellee's demurrers thereto. Appellee presented its evidence, and Appellant moved for directed verdict, arguing that Appellee had failed to present evidence that a "formation difficult or hazardous to drill" had been encountered, so as to bring Appellee within the protection of the shift of loss provisions. The Trial court denied Appellant's Motion for Directed Verdict. The Trial Court instructed the jury that the contract was unambiguous, required no notice of change of status to Appellant, and that the shift from "footage" to "day work" was automatic. The Court refused to give Appellant's requested instructions regarding use of the word "encountered" in the "hazardous drilling" clause, the theory of "ejusdem generis," estoppel or fraud, and construction of contracts. The jury returned a verdict for Appellee for services rendered.

6. In its first proposition of error, Appellant asserts that the Trial Court erred in finding the contract unambiguous as to the necessity of notice of change of status, and that the shift from "footage" to "day work" on encountering difficult drilling formations was automatic. Appellant hereunder argues that extrinsic evidence of custom and usage as to notice of change of status was improperly excluded. We agree with Appellant. "The whole of the contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." 15 O.S.1981 § 157. "A contract

is to be interpreted according to the law and *usage* of the place where it is to be performed, or, if it does not indicate place of performance, according to the law and *usage* of the place where it is made." 15 O.S.1981 § 162. "Stipulations which are necessary to make a contract reasonable or *conformable to usage,* are implied in respect to matters concerning which the contract manifests no contrary intention." 15 O.S.1981 § 171. "All things that in law or *usage* are considered as incidental to the contract, or as necessary to carry it into effect, are implied therefrom ..." 15 O.S. 1981 § 172.

7. In the present case, the contract itself requires that the Appellee as contractor submit daily reports of the well status to Appellant, and construing all of the relevant contractual provisions together which relate to control of operations and liability for damage or loss, we hesitate to say that the contract is, or is not, ambiguous as to notice of change of status. We do, however, find it unreasonable that Appellee should be able to unilaterally shift risk of loss and control of operations to Appellant without some sort of notice of the change of status. We believe that Oklahoma rules of contracts construction clearly anticipate the admission and consideration of extrinsic evidence of industry custom and usage with regard to notice of change of status as an aid to the court in construing a contract. Whether the custom of the industry does, in fact, anticipate that some type of notice of change of status be given bears directly on whether no notice of change of status was required, and/or that the change of status was automatic. We therefore hold that the Trial Court's ruling excluding evidence of custom and usage regarding notice were erroneous, and for that reason, judgment must be reversed.

■ 8. In its next proposition of error, Appellant claims error by the Trial Court in sustaining Appellee's demurrers to Appellant's evidence of intentional damage to property, negligence and fraud. "When the trial court considers a demurrer to the evidence or a motion for directed verdict, it must consider as true all evidence and all reasonable inferences favorable to the party against whom the demurrer or motion is directed, and disregard any conflicting evidence which is favorable to the demurrant or movant." *Messler v. Simmons Gun Specialties, Inc.,* 687 P.2d 121, 130 (Okl. 1984). The demurrer should be overruled unless there is an absence of evidence or proof which shows a right to recover on the part of the party opposing the demurrer or motion. Id.

■ 9. We have reviewed the record and find the Trial Court's ruling on Appellee's demurrers to the Appellant's evidence of fraud and intentional damage to property unaffected by error. However, we find evidence in the record, viewing that evidence in the light most favorable to Appellant, which warrants denial of Appellee's demurrer to Appellant's claim of negligence. There is expert evidence in the record which shows that the pumping of a high viscosity "pill" by Appellee's assistant drilling superintendent was, at the very least, negligent. Under these circumstances, the demurrer to the evidence of Appellee's negligence should have been overruled, and the Trial Court's ruling to the contrary also requires reversal.

■ 10. Further, we find that the exculpatory clause employed in the instant contract does not abrogate the duty of care, and the negligence asserted must clearly fall within the ambit of the defined exculpation. *ANR Production Co. v. Westburne Drilling, Inc.,* 581 F.Supp. 542 (D.C.Colo.1984). The contract itself allocates risk of loss on the parties according to which of the parties "caused" the damage or loss. The exculpatory clause is thus in direct contravention to the clauses allocating liability for loss according to "cause" therefor, and must be construed narrowly. 15 O.S.1981 §§ 168, 169. We therefore hold that Appellee may not escape liability for its own negligence or intentional acts under the exculpatory clause of the contract.

■ 11. Appellant next asserts the alleged error of the Trial Court denying Appellant's Motion for Directed Verdict. Appellant asserts hereunder that Appellee

had the burden of showing a "difficult or hazardous formation," the "encountering" of which would shift risk of loss to Appellant, and that Appellee failed to show the encountering of such a condition. Under *Messler,* supra, we find evidence in the record showing that the well was drilled in an area in which one could arguably conclude would be an area of difficult or hazardous drilling. There is also evidence in the record of mud engineers reporting cave-ins and sloughing of material into the hole, at least arguably indicative of a "difficult or hazardous" formation. We therefore find no error in the Trial Court's ruling denying Appellant's Motion for Directed Verdict.

12. Appellant lastly assails the Trial Court's instructions to the jury. The tests on review of instructions given or refused are whether there is a probability that the jurors were misled and thereby reached a different conclusion than they would have reached but for the questioned instruction, or there was excluded from consideration a proper issue of the case. *Woodall v. Chandler Material Co.,* 716 P.2d 652, 654 (Okl.1986) (different conclusion); *VanWart v. Cook,* 557 P.2d 1161 (Okl.App.1976) (different result or exclusion of proper issue). Under our previous holding relating to construction of contracts, we believe the Trial Court erred in failing to give instructions commensurate with the previously cited rules of contract construction. However, under the circumstances of this case, the Trial Court properly refused to instruct on the use of the word "encountered" in the contract, as well as on the concepts of "ejusdem generis" and "estoppel," as the instructions given under the provisions of Title 15 clearly encompass determining usage of words and construing clauses together. The Trial Court concluded, and we agree, that Appellant's evidence of fraud was lacking, and Appellant's requested instruction on estoppel is more aptly a "fraud" instruction. We further find no error in the Trial Court's refusal to instruct on the issue of tortious breach of contract. *Timmons v. Royal Globe Ins. Co.,* 653 P.2d 907 (Okl.1982).

For the foregoing reasons, the judgment rendered on jury verdict is REVERSED and the cause REMANDED for new trial and further proceedings not inconsistent with this opinion.

GARRETT, P.J., and REYNOLDS, J., concur.