April Dawn KINKEAD, d/b/a the Four Aces Company, Katherine Bell, J.H. Bowles, Rudy S. Cadra, Carley & McCaw, Inc., Flora Dean, Ray De-Shields, Al Ehly, Roberta Ehly, Howard J. Friedman, Ronny D. Gandy, Abraham Kaplan, Lillie Mae Lober, Troy O. Lollis, John Mitchell, Nabob Production Co., Vincent E. Rawson, Mike Reddick, Dolores Rountree, Steven Secora, Robert T. Swanton, Donald R. Taylor, Zella M. Taylor, Randy R. Taylor, and Tom Witty, Appellants/Counter–Appellees,

v.

WESTERN ATLAS INTERNATIONAL, INC., a Corporation, Appellee/Counter–Appellant.

No. 78370.

Court of Appeals of Oklahoma,
Division No. 1.

July 20, 1993.

Certiorari Denied May 10, 1995.

James R. Cox, Enid and John T. Edwards, Oklahoma City, for appellants/counter-appellees.

John R. Couch, Charles A. Brandt, and Linda Brown, Oklahoma City, for appellee/counter-appellant.

## OPINION

HANSEN, Chief Judge:

Appellants seek review of the trial court's judgment on a jury verdict in favor of Appellee, Western Atlas International, Inc. (Western). Appellants are owners of working interests in the Gibson No. 1 Well, which is located in Section 21, T2N, R19ECM, Texas County, Oklahoma. Appellants brought this negligence action against Western for wireline services Western performed on the Gibson well. The jury's verdict for Western found the parties entered into the service contract dated January 29, 1990, freely and knowingly and that Appellants breached that contract by failure to pay for services rendered and materials used. Western was

awarded $3,455.00 in damages on its counter-claim for services rendered.

During drilling operations of the Gibson well on January 28, 1990, the drill string became impacted in the borehole. Appellant Kinkead d/b/a The Four Aces was the operator of the well. After unsuccessfully trying to free the drill string, Appellants' engineer, Cooper, contacted Western via telephone and hired Western to back off the drill string. The next morning, January 29, 1990, Western arrived at the well site and while performing the back off services, the drill string parted and fell within the casing. That afternoon, Leroy Kinkead, the general manager of The Four Aces, arrived at the location and executed a service order presented by an employee of Western which covered the work which Western had performed on the well. Appellants' subsequent efforts to remove the fallen pipe and to whipstock the well were unsuccessful and they plugged and abandoned the well. Appellants brought this action to recover damages for loss of tools in the hole, loss of their investment in the well, lost earnings from the well, the costs of whipstocking the well, and loss of recoverable reserves.

In their first proposition of error, Appellants maintain the trial court erred in finding as a matter of law that the January 28, 1990, oral contract embodied the exculpatory language set forth on the reverse side of the service order executed on January 29, 1990.[1] Appellants argue they are not bound by the exculpatory language because:

a. there was no discussion of the exculpatory language on January 28th between the parties;

b. there was no mutual assent to the language, which is required to modify an existing contract;

c. Western did not inform Cooper or Kinkead of the language on the back of the service order form; and

d. the exculpatory language on the service order form is not sufficiently explicit to relieve Western of its negligence.

Western responds Appellants are bound by the exculpatory language because such language is customary and in common usage in the oil and gas industry, and alternatively, that Kinkead ratified the oral contract by signing the service order after the work had been performed.

The service order dated January 29, 1990, and signed by Kinkead sets forth the services rendered on the well and their cost. The front of the form has two places for the customer's signature: one at the top of the form, which was next to a provision regarding instrument protection and a statement that the customer accepts the terms and conditions on the reverse side of the order. This signature line was left blank. At the bottom of the service order is another signature line which Kinkead signed. Above this signature line are the words, "I certify that the above services, materials and/or products have been received." The exculpatory language on the back of the service order provides in pertinent part:

7. Hold Harmless. Customer shall indemnify and hold Contractor, its employees, officers, directors and shareholders harmless from and against any and all liabilities, losses or damages, claims, demands, causes of action, suits and associated expenses (including reasonable attorney's fees) and awards arising in favor of

---

1. In connection with this argument, Appellants also challenge Jury Instruction No. 9. Instruction 9 reads as follows:

The court has found, as a matter of law, that on January 29, 1990, the plaintiffs and the defendant entered into a binding contract whereby the defendant was to perform certain services in exchange for compensation. That contract contained certain terms and conditions which, if enforceable, relieve the defendant, Western Atlas, of liability for the acts complained of by plaintiffs. Such agreements are enforceable, and are not against the public policy of the State of

Oklahoma, provided that the intent to excuse one party from the consequences of his own negligence is expressed in clear, definite and unambiguous language. That is to say, it is necessary that the persons or entities that entered into the agreement were aware of the terms and conditions of the agreement. It is also necessary that no disparity of bargaining power existed between the parties at the time the contract was entered into. In determining whether disparity of bargaining power existed, you must consider whether either party was deprived of its free choice to enter into the contract in question.

Customer or any third party as a result of injury or death to persons, loss of, damage to or loss of use of property (including subsurface formations) and financial loss of any kind in any way occurring, incident to, arising out of or in connection with:

(a) equipment or services furnished by Contractor; ....

■ Both parties agree they entered into a binding oral contract on the evening of January 28, 1990, when Cooper called Mr. Dean Parker of Western. The dispute is whether Appellants should be bound by the language of the service order signed the next day. With regard to their contention they should not be bound because Western did not inform them of such language, Appellants have cited no authority to show Western was under a duty to read to Kinkead or to inform Kinkead of all the terms of the written service order which Kinkead executed. It is axiomatic that a party cannot avoid a contract on the grounds he or she did not read it, in the absence of fraud, misrepresentation or deceit. *Bass Furniture & Carpet Co. v. Finley*, 129 Okla. 40, 263 P. 130 (1927); *Vails v. Southwestern Bell Telephone Company*, 504 F.Supp. 740 (W.D.Okla.1980).

■ The trial court did not specifically find the service order was a "modification" of the oral contract or that Kinkead had "ratified" the oral contract by signing the service order and we find it unnecessary to do so on appeal. Our review of the record indicates there is competent evidence from which the trial court could find the terms of the oral contract were encompassed in the later-executed service order. There was substantial evidence the exculpatory language in the service order was widely used in the industry and that Cooper and Kinkead, being knowledgeable in the field, were or should have been aware of such use and had signed simi-

lar orders with other companies. Thus, even though Appellants had not discussed the issue of the risk of loss or damage on January 28th, there is competent evidence from which the court could determine that it was customary and common usage in the industry that the risk of loss or damage to certain property for services performed by a wireline service company is typically borne by the customer, that such custom is implied in the oral contract, and that the execution of the service order was a formalization of the prior agreement.[2] *See Tankers and Tramps Corporation v. Tugs Jane McAllister and Margaret M. McAllister*, 358 F.2d 896 (2nd Cir.1966); *Early Bird Oil Co. v. Daley*, 115 Okla. 176, 241 P. 781 (Okla.1925); *Samson Resources Company v. Quarles Drilling Company*, 783 P.2d 974 (Okla.App.1989).

■ Having determined the trial court did not err in finding the parties entered into a binding contract on January 29, 1990, which included all terms on the written service order, we next address Appellants' argument the exculpatory language on the service order is not sufficient to relieve Western of responsibility for its negligence.

■ To be enforceable, an agreement indemnifying a party against its own negligence must meet three conditions:

1. the parties must express their inter.* to exculpate in unequivocally clear language;

2. the agreement must result from an arm's-length transaction between parties of equal bargaining power; and

3. the exculpation must not violate public policy.

*Transpower Constructors v. Grand River Dam Authority*, 905 F.2d 1413, 1420 (10th Cir.1990); *Elsken v. Network Multi–Family Security Corporation*, 838 P.2d 1007 (Okla.

**2.** 15 O.S.1991, § 162 provides:
A contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.
15 O.S.1991, Section 171 provides:
Stipulations which are necessary to make a contract reasonable or conformable to usage, are implied in respect to matters concerning

which the contract manifests no contrary intention.
15 O.S.1991, Section 172 provides:
All things that in law or usage are considered as incidental to a contract, or as necessary to carry it into effect, are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded.

1992); *Gulf, C & S.F. Ry. Co. v. Anderson,* 120 Okla. 60, 250 P. 500 (1926).

On appeal, Appellants only challenge the first condition above, maintaining Western cannot be relieved of its own negligence because the exculpatory language does not contain the word "negligence". A negligence disclaimer clause must be clear, explicit and unambiguous in its intention to exculpate a contracting party from the consequences of its own negligence before it will be enforced. *Sterner Aero AB v. Page Airmotive, Inc.,* 499 F.2d 709 (10th Cir.1974). An exculpatory clause may be sufficiently clear even though it does not contain the word "negligence". *Transpower Constructors,* 905 F.2d at 1420; *Standard Ins. Co. of New York v. Ashland Oil & Refining Co.,* 186 F.2d 44 (10th Cir.1950). A review of these authorities indicates the above-quoted portion of the exculpatory clause is clear and explicit in its intention to exculpate Western for any negligence stemming from the services Western performed on the Gibson No. 1 Well. *See Fretwell v. Protection Alarm Company,* 764 P.2d 149 (Okla.1988).

Appellants also challenge the trial court's submission of Instructions No. 9 and 10 to the jury. The record shows Appellants objected to both instructions but participated with opposing counsel and the court in re-wording the instructions. After the revisions, Appellants reiterated their objection to Instruction 10. Even if Appellants have properly preserved their objections to both instructions, their argument that Instruction 9 was improper because it allowed the jury to decide whether the exculpatory language was enforceable is untenable. Instruction 9 stated correctly the three requisites of an enforceable exculpatory clause and submitted the issue of the existence of a disparity in bargaining power to the jury. Instruction 9 fairly presented the issues supported by the evidence and correctly stated the law. The issue of the existence of a disparity in bargaining power is a proper issue for determination by the trier of fact.[3]

Appellants challenge the jury's determination there was no disparity in bargaining power between Appellants and Western. In a law action the verdict of the jury is conclusive as to all disputed facts and all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury, the verdict and judgment based thereon will not be disturbed. *Walker v. St. Louis–San Francisco Ry. Co.,* 646 P.2d 593, 597 (Okla.1982).

Our review of the record indicates there was competent evidence to demonstrate all the contracting parties were quite knowledgeable in the field of oil and gas operations and that Appellants had dealt with other drilling service companies for similar types of operations. The evidence was conflicting whether Appellants could have contracted with another service company for the same services without being bound by similar exculpatory language. Appellants cite *Mohawk Drilling Company v. McCullough Tool Company,* 271 F.2d 627 (10th Cir.1959) to show parties have unequal bargaining strength where one party is not able to obtain a specialized service unless he is willing to sign an exculpatory clause. In *Mohawk,* the court refused to enforce an exculpatory clause finding the parties had unequal bargaining power and that such clause was contrary to public policy. In the present case, the evidence suggests such clauses were used at least by the major oil and gas companies and probably by some of the smaller ones. There was evidence, however, that a party who wished to eliminate or modify such language could bargain for the allocation of the risks which attend such drilling services. There is competent evidence from which the jury could conclude the parties enjoyed equal bargaining positions and we will not disturb that conclusion on appeal.

Appellants object to Instruction 10 because there was no evidence of past dealings between the parties.[4] Instruction 10

---

**3.** *Graham v. Chicago, Rock Island and Pacific Railroad Company,* 431 F.Supp. 444 (W.D.Okla. 1976); *Trumbower v. Sports Car Club of America, Inc.,* 428 F.Supp. 1113 (W.D.Okla.1976).

**4.** Instruction 10 provides:
You are instructed that in determining whether all parties to the January 29, 1990, contract were aware of and agreed to the terms and conditions excusing defendant from liability

does not refer to past dealings between the parties but to past dealings of the parties in the oil and gas business. Appellants' attack of Instruction 10 on this ground is without merit. Appellants objected to Instructions 11 and 12 "for the same reasons" they objected to Instructions 9 and 10. The "reason" they say such Instructions are error is because they claim there is no evidence the parties agreed to the terms of the service order and because the service order did not represent the contract between the parties. As previously discussed in the first proposition of error, competent evidence was introduced from which the jury could determine the parties entered into a valid agreement on January 29, 1990, as evidenced by the signed, written service order. Where instructions fairly and reasonably present the issues joined by the pleadings and presented by the evidence, they are sufficient. *Great Atlantic & Pacific Tea Company v. Mullen,* 301 P.2d 217 (Okla.1956).

■■■ Appellants next maintain the trial court committed reversible error in refusing to submit to the jury an instruction which would have entitled them to recover lost earnings on the well in the event the jury determined Western was negligent. In connection with this proposition, Appellants challenge Instruction No. 20 which defines the damages recoverable. We need not reach the issue of the proper measure of damages because where a jury has denied a plaintiff any recovery, the question of the measure of damages is irrelevant. *State ex rel. Department of Highways v. Rumsey,* 205 Okla. 307, 237 P.2d 448 (1951); *Schofield v. City of Tulsa,* 111 Okla. 220, 239 P. 236 (1925). The giving of an incorrect instruction as to the proper measure of damages is immaterial when the jury has determined the plaintiff is not entitled to any damages. *Schofield,* 239 P. at 237.

■■ Appellants next appeal the trial court's refusal to allow certain rebuttal testimony. The trial court refused to let Appellants offer the testimony of Mr. Robbins during rebuttal, finding that based on the offer of proof, he should have been called as a witness in Appellants' case in chief. Robbins would have testified regarding who was giving the orders on the morning of January 29, 1990, while backing off the well, thereby contradicting the testimony of Appellee's witness Schriber. The record shows this testimony would have been cumulative and that Appellants had ample opportunity to prepare evidence in rebuttal to Schriber's testimony before trial.

■■■ Rebuttal evidence is properly deemed to be evidence which is relevant only by virtue of evidence introduced by the adverse party. *Wells v. C.M. Mays Lumber Company, Inc.,* 754 P.2d 888 (Okla.App. 1987). Rebuttal evidence should explain or rebut the evidence introduced by the adverse party, not just bolster the party's case in chief. *Wells,* at 889. The trial court has reasonable discretion in limiting rebuttal testimony and the rulings thereon will not be reversed unless the trial court has abused this discretion. *Swyden v. Killiam,* 531 P.2d 1031 (Okla.1975). We find no abuse of discretion in refusing to allow the testimony of Robbins.

■■ Appellants also contend the trial court abused its discretion in limiting the rebuttal testimony of their witness, Wilson. The trial court granted Appellants' request to allow Wilson to testify regarding certain aspects of the structure of the well but denied Appellants' request to have Wilson testify regarding pipeline pressure as it related to the ultimate recoverable reserves of the well. Without deciding whether such testimony

for the events complained of, you may consider the past dealings of the contracting individuals in oil and gas transactions of this type. Evidence of such past dealings would necessarily include number of years experience in the oil and gas exploration business, past dealings with contracts of the type used herein and general overall experience in the oil an gas industry. You should consider 1. Whether the parties or their agents or employees who entered into the contract were familiar with service contracts of the type used in this case. 2. Whether disparity of bargaining power existed at the time of contracting. 3. Whether the parties entered into the agreement freely and with knowledge of its terms and conditions. If so, you must find that the parties entered into the contract freely and with knowledge of the terms and conditions and that the contract is enforceable as written.

would have been proper on rebuttal, we find any error by the trial court in limiting such testimony to be harmless. Testimony regarding the probable reserves of the well addresses the issue of Appellants' damages. As previously stated, where the jury has determined the case in favor of the defendant, any errors at trial regarding evidence on the issue of Appellants' damages is irrelevant.

Finally, Appellants maintain the trial court committed reversible error in submitting Instruction 16 to the jury because there was no evidence to show an unforeseeable intervening cause and no evidence that Appellants assumed the risk of injury.[5] This instruction is a guide for the jury in its determination whether Western was negligent in the performance of services on the Gibson well. The jury determined the parties entered into a binding contract on January 29, 1990, and that the exculpatory provision shielded Western from any negligence they may have in connection with the services on the well. The test upon review of an improper instruction is whether there is a probability that the jurors were misled and thereby reached a different result than they would have but for the error. *Ankney v. Hall*, 764 P.2d 153 (Okla.1988). Any error by the trial court in submitting this instruction to the jury must therefore be deemed harmless.

On counter-appeal, Western appeals the trial court's order granting Appellants' motion to apportion costs of the trial transcript. The order found "good cause shown" and, ordered Western to pay the cost of transcribing those portions of the transcript counter-designated by Western. Appellants designated 760 pages to be transcribed from the eleven-day jury trial. Western counter-designated an additional 1,700 pages. The trial court ordered Western to pay for 1,354 pages at $2.50 per page, for a total of $3,385.00.

Rule 1.20 of the Rules of Appellate Procedure, 12 O.S., Ch. 15, App. 2, sets forth the procedure for designating proceedings and other items which are to be included on appeal. Paragraph (a) of Rule 1.20 requires the appealing party to file its designation of record. If there is designated for inclusion in the record any evidence which was stenographically reported, a copy of the designation shall be given to the court reporter, and the cost of preparing the transcript shall be advanced forthwith by the designating party. Paragraph (b) of Rule 1.20 authorizes any other party to file a counter-designation of record if the Appellant's designation designates less than all instruments and proceedings. Paragraph (c) of Rule 1.20 provides: "The costs of transcribing additional portions of the proceedings and evidence, designated by a party who did not appeal, shall be advanced forthwith by the party or parties taking the appeal unless the trial court shall direct otherwise for good cause shown. The expense of transcribing additional portions of the proceedings and evidence which are designated in support of, or in opposition to, a separate appeal (a cross-appeal or counter-appeal), from the same decision shall be advanced forthwith by the parties taking such appeal unless the trial court shall direct otherwise for good cause shown."

Western maintains Appellants have not shown good cause as would warrant apportioning the costs of 1,354 pages to them and that the counter-designation was necessary in order for Western to defend Appellants' petition in error which alleged seven errors. Appellants' application to apportion the transcript costs alleged the counter-designation was done for the purpose of imposing a hardship and burden on Appellants and that such portions of the transcript were not necessary for Western to defend the appeal. Western maintained its counter-designation was not filed to impose a hardship on Appellants and attached a schedule detailing the relevance of the counter-designated portions to Appellants' errors on appeal. At the hearing, Appellants presented no evidence that Western's purpose in counter-designating 1700 pages was to harass Appellants.

Counter-designation is the only sanctioned procedure for inclusion into the appellate record of material which, though

---

**5.** Instruction 16 consisted of Oklahoma Uniform Jury Instructions Nos. 9.6 (Direct Cause), 9.8 (Intervening Cause), and 9.14 (Assumption of Risk).

omitted from designation by the Appellant, is sought to be incorporated by the Appellee. *Chamberlin v. Chamberlin,* 720 P.2d 721 (Okla.1986). Rule 1.20 directs the Appellant to advance the costs for the additional portions of the record *unless* good cause is shown. Our review of the record indicates Appellants failed to show good cause to apportion these costs to Western and that the portions of the transcript designated by Western were necessary for Western to defend this appeal. The trial court's order of April 8, 1992, which requires Western to pay $3,385.00 in transcription costs is therefore, REVERSED.

Western's motion for attorney fees and costs in defending the application to apportion costs is denied. Western's motion for attorney fees on appeal is likewise denied.

AFFIRMED IN PART, REVERSED IN PART.

CARL B. JONES, P.J., and ADAMS, J., concur.